United States District Court
Eastern District of Louisiana

| | |
|---|---|
| Who Dat Shoppe! LLC | Civil Action |
| v. | Case No.  14-2085 |
| Who Dat?, Inc., Steve Monistere, Sal Monistere, Ellis J. Pailet, Brandon J. Frank, & Gregory D. Latham | Sec. |
| | Mag. |
| | Jury Demanded |

## Complaint

Now Into Court comes **Who Dat Shoppe! LLC** who files this Complaint with Jury Demand:

### Related Case

**1.**   This Complaint is closely related to the Counterclaim in LAED-13-6543-KDE-SS.

### Jurisdiction and Venue

**2.**   This United States District Court has jurisdiction under **28 USC §1331** of claims under **18 USC §1964(c)** (Civil-RICO) and under the **Clayton Act §4 & §16** (**15 USC §15 & §26**) & **Sherman Antitrust Act §2** (**15 USC §2**); jurisdiction under **15 USC §1121** of claims under the **Lanham Act** (**15 USC §1501**, *et seq.*); jurisdiction for declaratory judgment under **28 USC §2201(a)**; and supplemental jurisdiction under **28 USC §1367** over state-law claims: under **La. R.S. 51:123**; **La. R.S. 14:66**; the **Louisiana Unfair Trade Practices Act** (**LUTPA**), **La. R.S. 51:1405**, *et seq.*; and **Louisiana Civil Code Articles 2315** & **2324**; arising from the same transactions or occurrences and implicating the same questions of fact and related questions of law.

**3.**   Venue is proper in the Eastern District of Louisiana under **28 USC §1391** where the Defendants are subject to personal jurisdiction and are doing business, and where the acts complained of occurred or originated in such district.

### Plaintiff

**4.**   **Who Dat Shoppe! LLC** (WDShop) is a Louisiana limited liability company, with domicile address 311 Robert St., Slidell, LA 70458, St. Tammany Parish, and is Plaintiff here.

## Defendants

**5.**   **Who Dat?, Inc.** (WDI) is a Louisiana corporation, domicile address 201 St. Charles Ave., Suite 2500, New Orleans, LA 70170, Orleans Parish, and is made Defendant here.

**6.**   **Steve Monistere** is a natural person of majority domiciled in Texas, is owner and principal officer of Who Dat?, Inc., and is made Defendant here.

**7.**   **Sal Monistere** is a natural person of majority domiciled in Texas, is owner and officer of Who Dat?, Inc., and is made Defendant here.

**8.**   **Ellis J. Pailet** is a natural person of majority domiciled in Louisiana, is an attorney at law, with a business office at 650 Poydras Street, Suite 1470, New Orleans, LA 70131, Orleans Parish, Louisiana, and is made Defendant here.

**9.**   **Brandon J. Frank** is a natural person of majority domiciled in Louisiana, is an attorney at law, with a business office at 650 Poydras Street, Suite 1470, New Orleans, LA 70131, Orleans Parish, Louisiana, and is made Defendant here.

**10.**   **Gregory D. Latham** is a natural person of majority domiciled in Louisiana, is an attorney at law, with a business office at 201 St. Charles Avenue, Suite 2500, New Orleans, Louisiana 70170, Orleans Parish, Louisiana, and is made Defendant here.

## Overview of Complaint

**11.**   Who Dat?, Inc. (WDI) and Who Dat Shoppe! LLC (WDShop) are engaged in the business of selling Who-Dat-support apparel & merchandise displaying variations of the slogan "Who Dat", which is understood to be a slogan supporting the New Orleans, Louisiana region and its Saints professional football team. Defendant Who Dat?, Inc. is attempting to manipulate the Who-Dat-support apparel & merchandise market through a scheme to assert exclusive monopoly rights to sell products into that market, threatening and bringing litigation to force withdrawal of legitimate products and producers from the market based on fraudulently asserted and obtained trademark rights, making material misrepresentations— fraudulent and obstructive of justice— in court and to the U.S. Patent & Trademark Office (USPTO) and Louisiana Secretary of State in order to obtain, maintain, and litigate the trademark rights, and using abusive, intimidating, extortionate

threats and litigation tactics against legitimate competitors. The ulterior purpose of the Who Dat?, Inc. Trademark Scheme (WDI-TS) of abusive litigation, obstruction of justice, fraud, and extortion, conspired in by WDI's attorneys, is to acquire, preserve, and litigate bogus trademarks and trademark registrations as a means of asserting unwarranted monopoly rights, as set forth in detail herein. WDI's additional ulterior purposes in bringing the lawsuit LAED-13-6543 are to force Who Dat Shoppe! LLC into a position of accepting a license from Who Dat?, Inc., so that Who Dat?, Inc. can claim the benefit of Who Dat Shoppe! LLC's continuous use of "Who Dat" since 2007, when Who Dat?, Inc. was out of business and had abandoned any trademark rights, and to gain control of the "Who Dat Shoppe" name as an addition to WDI's portfolio of bogus trademark rights.

### Federal Civil-RICO

**12.**   The federal **RICO** statutes provide a private right of action in **18 USC §1964(c)**.

**13.**   Relevant to this Counterclaim, **18 USC §1961(1)** defines "racketeering activity" to include obstruction of justice under **18 USC §1503** or **§1512**, extortion under **18 USC §1951**, mail and wire fraud under **18 USC §1341** and **§1343**, and categorically violations of Louisiana criminal statutes **La. R.S. 14:66** (extortion) & **La. R.S. 51:123** (attempted monopolization).

### Federal Clayton Act & Sherman Antitrust Act

**14.**   Attempted monopolization is unlawful under **Sherman Antitrust Act §2** (**15 USC §2**).

**15.**   A private civil action is available to "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws" under **Clayton Act §4** (**15 USC §15**) which provides for recovery of treble damages, costs, reasonable attorney fees, and interest.

**16.**   Injunctive relief "against threatened loss or damage by a violation of the antitrust laws" and reasonable attorney fees are available under **Clayton Act §16** (**15 USC §26**).

**17.**   The **Clayton Act** provides a 4-year limitations period in **§4A** (**15 USC §15a**).

**18.**   The enforcement of a trademark registration procured by fraud on the USPTO may be violative of **Sherman Act §2** provided the other elements necessary to a **§2** case are present, triggering the treble damages provision of **Clayton Act §4**.

### Federal law re trademarks & trademark registrations

**19.**   The **Trademark Act of 1946**, as amended, called the **Lanham Act**, codified at **15 USC §1501, *et seq.***, governs registered and unregistered trademarks, and unfair competition. The ability to serve as an indication of the origin of goods or services is a fundamental requirement for the existence of a trademark. That is why a generic term can never serve as a trademark, a merely-descriptive term can only serve as a trademark if it has acquired distinctiveness and secondary meaning by being used *exclusively* as an indicator of origin for a significant period of time, and a functional feature can never serve as a trademark.

**20.**   Registration of federal trademarks is administered by the United States Patent and Trademark Office (USPTO). The records of trademark applications and any resulting registrations, known as "file wrappers", are publicly available documents accessible on the USPTO's internet website <uspto.gov>.

**21.**   Application for federal trademark registration requires a sworn statement and other statements from applicants, and the examination of applications by a "Trademark Examining Attorney" at the USPTO.

**22.**   Trademark rights arise by exclusive use in commerce, and can be negated, abandoned, or lost by non-use or non-exclusive use, as provided in **Lanham Act §45 (15 USC §1127)**.

**23.**   Federal trademark law, at **Lanham Act §38** (**15 USC §1120**), provides: "Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof."

**24.**   False assertion of a trademark whether or not federally registered, including false assertion of state-registered or common-law trademarks, is unfair competition or trade practice under **Lanham Act Section 43(a) (15 USC §1125(a))**. False registration of a trademark is also a violation of **Lanham Act Section 38 (15 USC §1120)**.

**25.**   Under **Lanham Act §37 (15 USC §1119)** this district court may properly determine whether Who Dat?, Inc. owns the trademark rights claimed in the identified registrations or applications,

and may enter an order that the registrations should be cancelled, the applied-for registrations should not issue, or that any registration issuing during the pendancy of this action be cancelled.

## Federal law re obstruction of justice

**26.** "Official proceeding" in the obstruction-of-justice statutes, as defined in **18 USC §1515(a)**, includes "(A) a proceeding before a judge or court of the United States, []" and "(C) a proceeding before a Federal Government agency which is authorized by law".

**27.** The United States Patent and Trademark Office (USPTO) is a federal agency, and the USPTO Trademark Trial and Appeal Board (USPTO TTAB) is an adjudicatory body.

**28.** "Corruptly" in the obstruction-of-justice statutes is defined in **18 USC §1515(b)** as "acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information".

**29.** Under **18 USC §1503**, it is unlawful to corruptly influence, intimidate, obstruct, or impede, or endeavor to influence, intimidate, obstruct, or impede, the due administration of justice.

**30.** Under **18 USC §1505**, it is unlawful to corruptly obstruct or impede or endeavor to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States.

**31.** Under **18 USC §1512(c)**, "[w]hoever corruptly— (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so," acts unlawfully.

**32.** Obstruction of justice under **18 USC §1503** or **§1512** is defined as "racketeering activity" in **18 USC §1961(1)**.

## Federal law re extortion

**33.** Under **18 USC §1951**, it is unlawful whenever anyone in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion, or attempts or conspires to do so, in furtherance of a plan or purpose to do anything in violation of the section. The term "extortion" means the obtaining of property from another, with

his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

34.   Extortion under **18 USC §1951** is defined as "racketeering activity" in **18 USC §1961(1)**.

### Federal law re misrepresentation, fraud, and attempted fraud

35.   Under **18 USC §1341**, whoever devises or intends to devise "any scheme or artifice to defraud", and uses the U.S. Mail or any private or commercial interstate carrier in connection with that scheme, is in violation of the law.

36.   Under **18 USC §1343**, whoever devises or intends to devise "any scheme or artifice to defraud", and uses "wire, radio, or television communication in interstate or foreign commerce" in connection with that scheme, is in violation of the law.

37.   Under **18 USC §1349**, "Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

38.   Mail and wire fraud under **18 USC §1341** and **§1343** are defined as "racketeering activity" in **18 USC §1961(1)**.

### Louisiana law

39.   Attempted monopolization is unlawful under criminal statute **La. R.S. 51:123**, and violators "shall be fined not more than five thousand dollars, or imprisoned, with or without hard labor, not more than three years, or both" for criminal violations.

40.   Antitrust violations are privately actionable under **La. R.S. 51:137** by any person injured in business or property, who "shall recover threefold the damages sustained by him, the cost of suit, and a reasonable attorney's fee".

41.   Injunctions against antitrust violations are available to private parties under **La. R.S. 51:129**.

42.   Extortion is unlawful under criminal statute **La. R.S. 14:66**, and violators "shall be imprisoned at hard labor for not less than one nor more than fifteen years".

43.   Extortion under **La. R.S. 14:66** and attempted monopolization under **La. R.S. 51:123** are defined categorically as "racketeering activity" in **18 USC §1961(1)**.

44.   Louisiana state-law trademarks are governed by **La. R.S. 51:211,** *et seq*. **La. R.S. 51:219** provides that a mark shall be cancelled, *inter alia*, when a court of competent jurisdiction orders such a cancellation on any ground, including any finding that the registrant is not the owner of the mark, that the registration was granted improperly, or that the registration was obtained fraudulently.

45.   **La. R.S. 51:221** provides: "Any person who shall for himself, or on behalf of any other person, procure the filing or registration of any mark in the office of the secretary of state under the provisions hereof, by knowingly making any false or fraudulent representation or declaration, verbally or in writing, or by any other fraudulent means, shall be liable to pay all damages sustained in consequence of such filing or registration, to be recovered by or on behalf of the party injured thereby in any court of competent jurisdiction."

46.   Registration of Louisiana trade marks is administered by the Louisiana Secretary of State. Louisiana trade mark registration is available upon the submission of a sworn, notarized application statement and the payment of a fee, with no examination performed.

47.   False assertion of a trademark is unfair competition or trade practice under the **Louisiana Unfair Trade Practices Act** (**LUTPA**), **La. R.S. 51:1405,** *et seq.*, and is also actionable under **Louisiana Civil Code Article 2315**.

48.   Conspiracy to commit a delict or tort is actionable under **Louisiana Civil Code Article 2324**.

### No protection under *Noerr-Pennington* nor the First Amendment

49.   Misrepresentation in the adjudicatory process or litigation is not a normal and legitimate exercise of the right to petition, and therefore is beyond the protection of the *Noerr-Pennington* doctrine and the First Amendment to the United States Constitution, and is actionable.

50.   Sham litigation and misuse of the governmental process itself as an anti-competitive weapon are exceptions to the *Noerr-Pennington* doctrine.

### Duties of candor & reasonable inquiry, & materiality of misstatements

51.   Statements made to the USPTO by an applicant or attorney are made under duties of candor and of reasonable inquiry, as set forth in 37 CFR §1.56, and material misstatements to the USPTO violate these duties to know and tell the truth.

**52.**   The Lanham Act governing trademarks is applied by both courts and the USPTO in determining the ownership and registration of trademark rights, and sets requirements of material facts to be established in determining such ownership and registration. Both the USPTO and the courts impose duties of candor and reasonable inquiry on applicants and litigants. Without the required statements or other evidence of material fact, no registration will issue from the USPTO and no ownership nor registration rights will be found by a court. Such required statements are therefore material, and misstatements of material fact are also material.

**53.**   The Louisiana Secretary of State requires a solemn statement of material fact as a condition of Louisiana registration of a trademark. Any misstatement of material fact is material.

### Use of mail & interstate wire, in interstate commerce

**54.**   Filings in proceedings in the U.S. Patent & Trademark Office (USPTO) for applications for trademark registrations, and *ex-parte* appeals, oppositions, and cancellations before the USPTO Trademark Trial and Appeal Board (TTAB) are made either by U.S. Mail or by electronic filing over interstate wire, and federal trademarks, by definition, affect interstate commerce.

**55.**   Filings in proceedings in this U.S. District Court for the Eastern District of Louisiana are required to be made electronically over interstate wire, and proceedings in court regarding federal trademarks affect interstate commerce.

### No time-bar

**56.**   Who Dat?, Inc. contacted and began threatening and attempting to extort money from Who Dat Shoppe! LLC in approximately OCT-2013. The main claims in this lawsuit against Who Dat Shoppe! LLC and Ronald B. Dunaway were filed 2-DEC-2013 and first notice was given via e-mail that same day. This Counterclaim is brought less than 1 year after the OCT-2013 first threats and the 2-DEC-2013 first notice of the lawsuit.

**57.**   Claims under the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1405, *et seq.*, and under Louisiana Civil Code Article 2315 are subject to 1-year prescription.

**58.**   The doctrine of continuing injury applies to the ongoing activities here. Clayton Act §4 and Civil-RICO can reach *injuries* sustained or becoming manifest within a 4-year period, even if those

injuries proceed from occurrences outside the 4-year period. Racketeering activity dating back 10 years can establish a Civil-RICO pattern, even if damages for early injuries are time-barred.

**Allegations re market for Who-Dat-support apparel & merchandise**

**59.**   The slogan "Who dat say dey gonna beat [our team]" has been known and used in popular culture, to express affinity and support for many teams, for many years before 1983.

**60.**   Although the phrase "Who Dat" continues to be used by high-school and college sports fans, especially in the River Parishes of South Louisiana where use of the phrase for sports originated, the primary, most commercially significant use of "Who Dat" is as a slogan of affinity and support for the New Orleans Saints football team, with secondary use as a slogan of affinity and support for the Greater New Orleans or South Louisiana and Mississippi region, its people, and its culture more generally.

**61.**   According to Who Dat?, Inc.'s own repeated assertions, the primary significance of "Who Dat" in this litigation is as an expression of affinity and support for the Saints football team.

**62.**   A t-shirt having screen-printed upon it a variant of the phrase "Who Dat", or many other phrases or designs, costs approximately $20. In contrast, a t-shirt of the exact same quality of materials and construction, but having no words or designs screen-printed upon it, costs no more than approximately $10. So at least half of the value of a screen-printed t-shirt lies in the words or designs that are screen-printed on the outside of the t-shirt.

**63.**   The desirability of a shirt with some variation of "Who Dat" printed on it rests upon the expressive qualities of such a shirt, and not upon the torso-covering qualities.

**64.**   A relevant market for Who-Dat-support apparel & merchandise exists, whose participants include very large national vendors such as National Football League Properties, LLC (NFLP) and many independent or small-chain vendors mostly located in the Greater New Orleans or in the South Louisiana and Mississippi regions.

**65.**   Customers in the relevant market for Who-Dat-support apparel & merchandise are residents, former residents, and by-affinity residents of the Greater New Orleans or South Louisiana and Mississippi regions, as well as Saints fans inside and outside of Louisiana. The customers want

to acquire specifically Who-Dat-support apparel & merchandise for the specific reason that the customers want to display affinity and support for either the Saints football team or the Greater New Orleans or South Louisiana and Mississippi regions, the people, and the culture generally.

66.   The relevant geographic market for Who-Dat-support apparel & merchandise is the United States, where the U.S. trademark registrations at issue here are enforceable, and where the customers live, with the greatest concentration of customers in the Greater New Orleans or South Louisiana and Mississippi regions.

67.   The product market for Who-Dat-support apparel & merchandise comprises t-shirts, jerseys, caps, and other apparel, and pennants, banners, tote bags, and other merchandise bearing the slogan "Who Dat" and variations of "Who Dat". There exist other types of apparel & merchandise bearing other words and designs, but they are not reasonably interchangeable because they fail to use the slogan "Who Dat" as a sign of the customer's affinity and support, and therefore are not appealing to the customer. There are alternatives to purchasing purpose-made Who-Dat-support apparel & merchandise, such as creating custom t-shirts and banners, as Saints fans formerly did, but the alternatives are significantly less convenient and more costly than buying the purpose-made Who-Dat-support apparel & merchandise, and are not reasonably interchangeable.

### Allegations establishing controversy & standing to counter-sue

68.   The non-attorney parties here are engaged in the business of Who-Dat-support apparel & merchandise, at either the retail or licensor level, in interstate commerce.

69.   Attorneys Ellis J. Pailet and Brandon J. Frank, at relevant times, had ownership interests in, and control over the activities of Who Dat?, Inc., over and above the mere filing of trademark-registration applications, drafting of contracts and cease-and-desist letters, and other transactional legal work. Attorney Pailet was involved in the creation of WDI, planned WDI's royalty-extorting schemes, and personally accompanied the Monisteres on royalty-extorting visits.

70.   Who Dat Shoppe! LLC (WDShop) is in the business of selling apparel and other goods emblazoned with either the properly licensed logos of sports teams, primarily LSU, Saints football, Pelicans basketball, and VooDoo football, or with slogans and designs such as "Who Dat" which

do not require any license. Who Dat?, Inc. (WDI) claims to be in the business of licensing Who-Dat-support apparel & merchandise. Therefore Who Dat Shoppe! LLC and Who Dat?, Inc. are business competitors in the business of Who-Dat-support apparel & merchandise.

71.   Who Dat Shoppe! LLC is a duly constituted Louisiana limited liability company continually registered and in good standing with the Louisiana Secretary of State since 19-OCT-2007, doing business under the name "Who Dat Shoppe" continually, publicly, and notoriously since 2007.

72.   In 2010, Who Dat?, Inc. first communicated with Who Dat Shoppe! LLC, but that communication was not followed up with any more communication in 2011, 2012, or most of 2013.

73.   Beginning approximately OCT-2013, Who Dat?, Inc. sent Who Dat Shoppe! LLC communications claiming trademark rights in WHO DAT, WHO DAT NATION, TWO DAT, & 2 D@!, and demanding large yearly payments for a license to sell goods having the slogan "Who Dat" on them, demanding payment of royalties, and explicitly threatening litigation.

74.   Who Dat Shoppe! LLC owner and principal Ronald B. Dunaway investigated Who Dat?, Inc.'s demands and, in evaluating his position, relied on publicly available information and documents including (1) the 7-NOV-2012 notice posted by WDI on its website <whodat.com/who-dat-trademark-dispute-settled> announcing settlement of Case No. LAED 10-1333 c/w 10-2296, and asserting "WDI has overcome yet another challenge to its exclusive rights in its WHO DAT trademarks and gained control over very harmful infringing use of its marks" and other assertions of WDI's prevailing in that case; (2) other partial knowledge of Case No. LAED 10-1333 c/w 10-2296; (3) partial knowledge of WDI's lawsuit and confidential settlement against Rouse's (Case No. LAED 12-2189); (4) partial knowledge of WDI's lawsuits against Ibrahim, et al. (Case No. LAED 13-5977), against Blue World, LLC (Case No. LAED 13-6006) and against Sadhwani, et al. (Case No. LAED 13-6295); (5) publicly available records on <uspto.gov> for oppositions, & cancellations; (6) facially valid federal trademark Registrations Nos. 2,890,070 for WHO DAT? BLUES BAND, 4,310,960 for WHO DAT?, 4,385,857 for WHO DAT?, 4,051,289 for TWO DAT, 4,339,102 for TWO DAT!, & 4,402,283 for WHO DAT; (6) federal trademark registration Applications Nos. 85-113,102 for WHO DAT, 85-113,104 for 2 D@!, & 86-050,118 for WHO DAT?; and (7) facially

valid Louisiana state Trade Mark Registrations Nos. 62-1132 for WHO DAT NATION, 62-1569 for WHO DAT?, 63-4800 for WHO DAT?, & 63-4828 for WHO DAT NATION.

75.   Customers and potential customers in the Who-Dat-support apparel & merchandise market have access to, and are likely to have knowledge of, the same above-listed publicly available information relied upon by Who Dat Shoppe! LLC, and customers are likely to be influenced by that information, to Who Dat Shoppe! LLC's detriment and Who Dat?, Inc.'s benefit.

76.   Who Dat Shoppe! LLC communicated with Who Dat?, Inc. through an attorney, and partially complied with WDI's demands in the face of WDI's threats by removing signs saying "Who Dat" from the exterior of the store in Slidell on 4-NOV-2013, and by removing apparel and merchandise bearing the slogan "Who Dat" from display inside the store at approximately the same time.

77.   Who Dat?, Inc. made claims against Who Dat Shoppe! LLC, for alleged infringement of the purported trademarks, in civil action LAED-13-6543 filed 2-DEC-2013.

78.   Who Dat Shoppe! LLC has been injured by the unlawful actions of Who Dat?, Inc. alleged with specificity herein.

79.   Who Dat Shoppe! LLC's standing to bring this counter-suit is established by the main-action claims by Who Dat?, Inc. against WDShop.

80.   Who Dat Shoppe! LLC's standing to bring claims under the federal Lanham Act is established by proximate injury to WDShop resulting from Who Dat?, Inc.'s complained-of actions as alleged.

81.   Who Dat Shoppe! LLC's standing for LUTPA claims against Who Dat?, Inc. is established by WDShop's allegations of ascertainable loss as a result of WDI's actions as alleged.

82.   Who Dat Shoppe! LLC's standing under Louisiana Civil Code Article 2315 is established by the claims of damages as alleged.

83.   Who Dat Shoppe! LLC's standing to bring Civil-RICO claims is established by WDShop showing a pattern of violation of 18 USC §1962 by the Who-Dat?-Inc. Defendants, proximately causing injury to WDShop's business and property, as alleged with specificity herein.

84.   Who Dat Shoppe! LLC's standing under Clayton Act §4 and La. R.S. 51:137 is established by antitrust injury and by Who Dat?, Inc.'s sham litigation and misuse of the governmental process

itself as an anti-competitive weapon in attempting to enforce trademark registrations acquired by fraud and to enforce them beyond their legitimate scope, as alleged with specificity herein.

85.   Who Dat Shoppe! LLC's standing to bring all claims is further established by the business-competitor relationship between the parties, by the implied and explicit threats of enforcement and litigation made by Who Dat?, Inc. against WDShop, and by the enforcement actions and litigation actually brought by WDI against WDShop.

### Allegations re "Who Dat" & WDI's abandonment of any trademark rights

86.   Who Dat?, Inc. asserted in court filings that WDI first used "Who Dat" in 1983, in a song that expressed affinity and support for the Saints football team.

87.   Who Dat?, Inc. asserted in court filings that WDI developed a "Who Dat! Fan Club" in cooperation with the Saints football team, under a written agreement signed in 1998.

88.   Who Dat Shoppe! LLC has a business need to continue to sell apparel and merchandise bearing the slogans "Who Dat", "Two Dat", and other popular slogans.

89.   Who Dat?, Inc. never had any trademark rights in WHO DAT because the term was already generic, merely descriptive, and functional in 1983 as an expression of affinity and support, especially for team sports in the South-Louisiana River Parishes region, and was therefore incapable of serving as an indicator of origin of any goods or services associated with such expressions of affinity and support.

90.   Who Dat?, Inc. does not presently have any trademark rights in WHO DAT because the term has become generic, merely descriptive, and functional for t-shirts and apparel expressing affinity and support, especially for the Saints football team in the South-Louisiana region, and is incapable of serving as an indicator of origin of any such goods.

91.   Who Dat?, Inc. did not make bona fide use of the purported trademark WHO DAT in commerce during at least the period from 1993 through 2009.

92.   Who Dat?, Inc. did not use the purported trademark WHO DAT exclusively during at least the period from 1993 to the present 2014.

93.   On 3-FEB-1995 Steve Monistere executed an agreement between Who Dat?, Inc. and The Paramount Organization, Inc. styled "LICENSE OF WHO DAT TRADEMARK" which was a prohibited assignment in gross or naked transfer of trademark rights which operates as an express abandonment of the trademark rights.

94.   Who Dat?, Inc. has abandoned any trademark rights it might have had in WHO DAT, both by a significant period of no bona fide use in commerce by WDI with no intent to resume use, and by WDI's allowing the purported mark to become generic and otherwise lose significance as a mark through widespread non-exclusive use and failure to exercise control or to police the purported mark for a significant period of time, under Lanham Act §45 (15 USC §1127).

95.   The Louisiana corporate charter No. 34129278D for Who Dat?, Inc. was revoked on 15-FEB-2008 by the Louisiana Secretary of State for the stated reason that Who Dat?, Inc. failed to file annual reports for the 3 consecutive years 2005, 2006, & 2007. The charter was not reinstated by the Lousiana Secretary of State until 9-OCT-2009.

96.   Evidence that Who Dat?, Inc. did not make exclusive use of the purported WHO DAT mark for a significant period can be found by noting all of the "Who Dat" merchandise that has been available from other sources for many years, the assertions and registrations of the purported WHO DAT mark by the Saints football team and the NFL, and the proliferating, competing, inconsistent claims of trademark in WHO DAT by other parties.

97.   Evidence that Who Dat?, Inc. abandoned any trademark rights it may have ever had in WHO DAT may be found in the public application and registration records of the USPTO and the Louisiana Secretary of State. The "intent-to-use" applications contain statements by WDI that the marks were not being used in commerce at the time of application, and the abandonments for failure to file statements of use are indications that the marks were still not being used in commerce at the times of abandonment.

98.   Who Dat?, Inc. obtained a now-expired Louisiana Trade Mark Registration No. 41-2396 for WHO DAT? for "t-shirts, caps, bumper stickers, parties, records, banners, place cards" in Classes

14, 16, 20, 25, & 41, registered with the Louisiana Secretary of State on 14-NOV-1983 and expired on 14-NOV-1993.

99.   Who Dat?, Inc. filed an "intent-to-use" application for trademark registration in the USPTO, Serial No. 74-218,866, for WHO DAT? for "clothing; namely, T-shirts, sweatshirts, scarfs, hats, jackets, pants, shirts, shorts, visors, headbands, and socks" in Class 025, filed 4-NOV-1991 and abandoned 26-FEB-1993 because no Statement of Use was filed by Who Dat?, Inc.

100. Who Dat?, Inc. filed an "intent-to-use" application for trademark registration in the USPTO, Serial No. 74-459,278, for WHO DAT? for "clothing; namely, T-shirts, sweatshirts, scarves, hats, jackets, sport shirts, sport coats, and sport pants" in Class 025, filed 15-NOV-1993 and abandoned 19-APR-1995 because no Statement of Use was filed by Who Dat?, Inc.

101. Who Dat?, Inc. formerly had a now-cancelled federal trademark Registration No. 1,688,040, for WHO DAT? for "soft drinks" in Class 032, application filed 10 October 1990, registered 19-MAY-1992, cancelled by the USPTO on 24-NOV-1998, due to the failure of Who Dat?, Inc. to file a Section-8 statement of continued use.

102. Who Dat?, Inc. filed an application for trademark registration in the USPTO, Serial No. 73-745,956, for WHO DAT? for "flash cards, newspaper & bumperstickers" in Class 016, filed 15-AUG-1988 and abandoned 21-MAR-1990.

103. Who Dat?, Inc. filed an "intent-to-use" application for trademark registration in the USPTO, Serial No. 74-218,862, for WHO DAT? for "snack foods; namely, potato chips" in Class 029, filed 4-NOV-1991 and abandoned 26-FEB-1993 because no Statement of Use was filed by Who Dat?, Inc.

104. Who Dat?, Inc. filed an "intent-to-use" application for trademark registration in the USPTO, Serial No. 74-459,277, for WHO DAT? for "snack foods; namely, potato chips" in Class 029, filed 15-NOV-1993 and abandoned 12-APR1995 because no Statement of Use was filed by Who Dat?, Inc.

105. The New Orleans Louisiana Saints, L.L.C. obtained Louisiana Trade Mark Registration No. 46-0535 for WHO DAT for "advertising and business", in Class 43 for advertising and business, on

8-APR-1988, and cancelled that registration on 6-FEB-2012. Therefore the Louisiana Trade Mark WHO DAT was owned and registered by another entity, not Who Dat?, Inc., during the time that WDI was applying for registration of, and asserting the same trademark in litigation.

**106.** On 2-FEB-2010 the Louisiana Attorney General sent a letter to the Senior Vice President and General Counsel of National Football League Properties, LLC (NFLP) requesting NFLP to: "confirm the following to be correct: 1. The NFL does not claim to have exclusive ownership rights now or at any time in the future over the expression 'Who Dat' and/or 'Who Dat Nation'; 2. The NFL does not claim to have exclusive ownership rights now or any time in the future over the fleur-de-lis; 3. The NFL does not claim to have exclusive ownership rights now or at any time in the future over the colors Black or Gold or any combination thereof; and 4. The NFL will send a clarification letter to all recipients of prior letters or communications confirming numbers 1 through 3 above." This letter and its provisions were widely reported in the media at the time.

**107.** On 2-FEB-2010 the National Football League (NFL) on behalf of the New Orleans Saints football team, sent a form letter to essentially all sport-support apparel & merchandise vendors in New Orleans and South Louisiana, stating categorically: "Please be advised that the NFL does not claim to have exclusive ownership rights now or at any time in the future over: (1) the expression "WHO DAT" or "WHO DAT NATION"; (2) the fleur-de-lis; or (3) the colors Black or Gold or any combination thereof. Rather, the NFL challenges the sale of products bearing the Saints fleur-de-lis design and the WHO DAT phrase only when those products contain or are advertised using other trademarks or identifiers of the Saints or the NFL". The NFL also issued a press release. The terms in the 2-FEB-2010 letter were widely reported in the media, and it was widely known that "Who Dat" and "Who Dat Nation" had been declared to be in the public domain by the Saints football team and the NFL.

**108.** By 2-FEB-2010, WHO DAT and WHO DAT NATION had become generic and functional as a slogan of support, regardless of however and whenever it had become generic and functional.

**109.** Who Dat?, Inc. does not own any trademark rights in WHO DAT, WHO DAT NATION, TWO DAT, or 2 D@! for the claimed goods in the claimed classes, for the reasons stated in detail

herein, including but not limited to the genericness, mere descriptiveness, and functionality of the terms as expressions of affinity and support of the Saints football team in the South-Louisiana region, the absence of WDI's exclusive use of the terms as trademarks capable of distinguishing WDI's goods or services, and WDI's abandonment of any trademark rights for a significant period of time during 1993 through 2009.

### Allegations re Civil-RICO

*Civil-RICO Enterprise*

110. Defendant **Who Dat?, Inc.**, is an "enterprise" as defined in **18 USC §1961(4)**, engaged in interstate and foreign commerce, the "**WDI Enterprise**".

111. The **WDI Enterprise** comprises several persons with various ownership, employment, contractor, supplier, or licensed relationships.

112. On its <whodat.com> website, **Who Dat?, Inc.** promotes and provides a link to "the new Who Dat Nation Fan Shop – ONLINE!" <cafepress.com/whodatnation> offering Who-Dat-support apparel & merchandise.

113. **Who Dat?, Inc.**, is also engaged in a legitimate business in a copyrighted novelty song.

114. The **WDI Enterprise** has an existence apart from and beyond the racketeering activity complained of in this action, and is an entity distinct from the Civil-RICO Persons.

*Civil-RICO Persons*

115. Defendant **Steve Monistere** is an individual as defined by **18 USC §1961(3)**, is an owner and is principal officer of Who Dat?, Inc., controlling the WDI Enterprise, and is a **Civil-RICO Person** distinct from the WDI Enterprise.

116. Defendant **Sal Monistere** is an individual as defined by **18 USC §1961(3)**, is an owner and officer of Who Dat?, Inc., controlling the WDI Enterprise, and is a **Civil-RICO Person** distinct from the WDI Enterprise.

117. Defendant **Ellis J. Pailet** is an individual as defined by **18 USC §1961(3)**, is an owner of Who Dat?, Inc., and is an attorney for Who Dat?, Inc., who has made filings in the USPTO for the

WDI Enterprise that are subjects of these Civil-RICO claims, who has a law practice outside of and distinct from his work for the WDI Enterprise, and is a **Civil-RICO Person**.

118.  Defendant **Brandon J. Frank** is an individual as defined by **18 USC §1961(3)**, is an owner of Who Dat?, Inc., and is an attorney for Who Dat?, Inc., who has made filings in the USPTO and in court for the WDI Enterprise that are subjects of these Civil-RICO claims, who has a law practice outside of and distinct from his work for the WDI Enterprise, and is a **Civil-RICO Person**.

119.  Defendant **Gregory D. Latham** is an individual as defined by **18 USC §1961(3)**, is an attorney for Who Dat?, Inc., who has made filings in the USPTO and in court for the WDI Enterprise that are subjects of these Civil-RICO claims, who has a law practice outside of and distinct from his work for the WDI Enterprise, and is a **Civil-RICO Person**.

*Civil-RICO Pattern*

120. The **WDI Enterprise** carries out the WDI Trademark Scheme (WDI-TS) for acquisition, maintenance, enforcement, and litigation of bogus trademark monopoly and exclusive rights, in an ongoing pattern of racketeering activity, targeted to injure Who Dat?, Inc.'s competitors, and causing injury to Plaintiff Who Dat Shoppe! LLC, as further set forth herein.

121.  The **Civil-RICO Pattern** set forth in detail herein is both a repeated and continuing pattern, where Who Dat?, Inc. has repeatedly and continues to file trademark applications for registration, has repeatedly and continues to send cease-and-desist letters to a large number of businesses, asserting bogus trademark rights, and has repeatedly and continues to file lawsuits such as this one asserting bogus trademark rights, and threatens to continue and increase such activity as pending trademark applications are granted registration and additional trademark applications are filed.

122.  The pattern of abusive lawsuits filed by WDI includes, in the Eastern District of Louisiana: 10-2296 *Who Dat, Inc. v. New Orleans Louisiana Saints, L.L.C., NFL Properties, LLC, Louisiana State, Louisiana State Secretary, Liquid Ventures Incorporated, Logo Express Marketing, Inc., Monogram Express, Fleurty Girl, LLC, & Storyville Apparel LLC*; 12-2189 *Who Dat, Inc. v. Rouse's Enterprises, L.L.C.*; 13-5977 *Who Dat?, Inc. v. Maqbool A. Ibrahim, et al.*; 13-6006 *Who Dat?, Inc. v. Blue World, LLC*; & 13-6295 *Who Dat?, Inc. v. Raju Sadhwani, et al.*

**123.** The pattern of abusive administrative proceedings includes, in the USPTO TTAB: Cancellation No. 92051559, WHO DAT? BLUES BAND in Class 041; & Cancellation No. 92055419, WHO DAT in Class 025; & in the USPTO: No. 77-983,139, WHO DAT? in Class 009; No. 77-907,193, WHO DAT? in Class 025; No. 77-932,659, TWO DAT in Class 025; No. 85-113,096, TWO DAT! in Class 018; No. 85-113,102, WHO DAT in Classes 034 & 043; No. 85-113,104, 2 D@! in Class 025; No. 85-132,369, WHO DAT in Class 033; No. 86-050,118, WHO DAT in Class 030; and before the Louisiana Secretary of State, No. 62-1132, WHO DAT NATION in Classes 25 & 35; No. 62-1569, WHO DAT? in Class 33; No. 63-4800, WHO DAT? in Classes 06, 17, 18, 20, 24, 25, 26, & 34; & No. 63-4828, WHO DAT NATION in Class 42.

**124.** Defendant **Who Dat?, Inc.** has violated **18 USC §1962(a)** by receiving income derived, directly or indirectly, from the WDI-TS pattern of racketeering activity, as further set forth herein.

**125.** Defendants **Steve Monistere** and **Sal Monistere** have violated **18 USC §1962(c)** by conducting or participating, directly or indirectly, in the conduct of the affairs of the WDI Enterprise through the WDI-TS pattern of racketeering activity, as further set forth herein.

**126.** Defendants **Ellis J. Pailet** and **Brandon J. Frank**, both attorneys, have at various times violated **18 USC §1962(c)** by conducting or participating, directly or indirectly, in the conduct of the affairs of the WDI Enterprise, and have violated **18 USC §1962(d)** by conspiring to commit the identified violations of 18 USC §1962(a) and 18 USC §1962(c), the WDI-TS pattern of racketeering activity, with knowledge of and agreement to the overall objective of the scheme, and agreement to participation in the scheme, as further set forth herein.

**127.** Defendant **Gregory D. Latham**, attorney, has violated **18 USC §1962(d)** by conspiring to commit the identified violations of 18 USC §1962(a) and 18 USC §1962(c), the WDI-TS pattern of racketeering activity, with knowledge of and agreement to the overall objective of the scheme, and agreement to participation in the scheme, as further set forth herein.

### Allegations re intent to commit and to conspire

**128.** Defendants Steve Monistere and Sal Monistere, together the majority owners and principal officers of Defendant Who Dat?, Inc., were retaining more than one attorney during the entire

period these transactions occurred, and acted through those attorneys for most of the complained-of transactions, and therefore Steve Monistere and Sal Monistere and Who Dat?, Inc. either knew about the actions, factual support for the actions, and consequences of the actions, or willfully refused to know.

129. Defendants Who Dat?, Inc., Steve Monistere, and Sal Monistere engaged in the complained-of unlawful conduct with full knowledge that the several transactions misstated the truth and were unlawful, and therefore acted with intent to deceive the Court and the USPTO for the purpose of gaining and maintaining unwarranted trademark rights, and obstructive, abusive, and extortive litigation, as set forth herein.

130. Defendants Ellis J. Pailet, Brandon J. Frank, and Gregory D. Latham are all  attorneys at law, and all were retained by Who Dat?, Inc. during the period these actions occurred, and each had independent duties to the Court and to the USPTO to make reasonable inquiries into Who Dat?, Inc.'s assertions and contentions, to avoid making material misstatements, and to immediately correct any misstatements and withdraw any misstated claims.

131. Defendants Ellis J. Pailet, Brandon J. Frank, and Gregory D. Latham, all attorneys, had actual knowledge, or should have known under their duties to inquire, that the complained-of conduct was unlawful, and therefore acted with intent to conspire in Who Dat?, Inc.'s, Steve Monistere's, and Sal Monistere's deceptions and material misstatements in court and in the USPTO for the purpose of gaining and maintaining the unwarranted trademark rights, and obstructive, abusive, and extortive litigation, as set forth herein.

132. All Defendants have acted with the specific intent to use the WDI Trademark Scheme (WDI-TS) for acquisition, enforcement, and litigation of bogus trademark monopoly and exclusive rights, to injure Who Dat?, Inc.'s competitors, injure competition in the Who-Dat-support apparel & merchandise market, establish monopoly rights to sell Who-Dat-support apparel & merchandise, and to conduct obstructive, abusive, and extortive litigation.

### Allegations re materiality, willfulness and fraud

**133.** Defendants Who Dat?, Inc.'s and its owners' and attorneys' actions were perpetrated willfully and fraudulently, as set forth in detail, by WDI making false assertions on the identified material matters, for the purpose of obtaining benefits to which WDI was not entitled, where the truth of the matters, if known, would have resulted in denial of the benefits, and with knowledge of the falsity of the assertions, and of WDI having no legitimate trademark rights.

**134.** Defendants Who Dat?, Inc.'s and its owners' and attorneys' false, sworn assertions in trademark applications to the USPTO and the Louisiana Secretary of State, set forth in detail herein, were false statements about issues material to the granting of registrations, where the truth of the matter, if known to the authorities, would have resulted in denial of the registrations, where WDI knew of the falsity of the statements and intended to use the false statements to obtain registrations to which WDI was not entitled, all comprising fraud upon the USPTO and the Louisiana Secretary of State in obtaining trademark registrations.

**135.** Defendants Who Dat?, Inc.'s and its owners' and attorneys' false, sworn assertions in court, set forth in detail herein, were false statements about issues material to the maintaining of WDI's trademark rights, where the truth of the matter, if known to the court, would have resulted in declarations of invalidity of the trademarks and cancellation of registrations, where WDI knew of the falsity of the statements and intended to use the false statements to maintain trademark rights and registrations to which WDI was not entitled, all comprising fraud upon the Court in maintaining and preserving trademark registrations.

### Allegations re obstruction, fraud, & abuse of process
### in trademark proceedings in Court & USPTO

**136.** The following identified fraudulent filings and submissions in court and to the USPTO were all made via U.S. Mail or interstate wire, and all affect federal trademarks and interstate commerce.

**137.** Plaintiff Who Dat Shoppe! LLC was proximately injured by Who Dat?, Inc.'s several repeated willful material misstatements made to the Court in Case No. LAED 10-1333 c/w 10-2296, made to the USPTO TTAB in Cancellations Nos. 92051559 & 92055419, made to the USPTO in 8 separate

applications for federal trademark registration, and made to the Louisiana Secretary of State in 4 separate trademark registrations, because the individual trademark registrations which were gained or preserved through fraud upon the courts and administrative agencies strengthened Who Dat?, Inc.'s position and ability to threaten, extort, unfairly compete, and ultimately sue Who Dat Shoppe! LLC under the color of those same trademark registrations.

138. Who Dat?, Inc.'s ulterior purpose for all court litigation and USPTO proceedings is to build a portfolio of bogus trademarks registrations through misstatements to the USPTO and TTAB, and to avoid having its trademarks declared invalid by any court through misstatements at the summary-judgment phase and through settling confidentially to avoid final judgment, in order to strengthen WDI's WDI-TS racket, whose object is to collect unwarranted royalties from competing businesses who, in truth, have every right to use "Who Dat" freely.

139. Who Dat?, Inc.'s additional ulterior purpose in bringing this lawsuit LAED-13-6543 is to force Who Dat Shoppe! LLC into a position of accepting a license from WDI, so that WDI can claim the benefit of WDShop's continuous use of "Who Dat" since 2007, when WDI was out of business and had abandoned any trademark rights, and to gain control of the "Who Dat Shoppe" name so that WDI can franchise the name. In doing this, WDI is repeating its successful takeover of Registration No. 2,890,070 for WHO DAT? BLUES BAND, as described below.

*USDC-LAED 10-1333 c/w 10-2296*

140. Who Dat Shoppe! LLC, in evaluating Who Dat?, Inc.'s OCT-2013 demands, relied on WDI's 7-NOV-2012 notice posted by WDI on its website <whodat.com/who-dat-trademark-dispute-settled> and still posted online in 2013 and through the present day, announcing settlement of Case No. LAED 10-1333 c/w 10-2296, and asserting "WDI has overcome yet another challenge to its exclusive rights in its WHO DAT trademarks and gained control over very harmful infringing use of its marks" and other assertions of WDI's prevailing in that case, and WDShop relied upon partial knowledge of Case No. LAED 10-1333 c/w 10-2296 from other public sources.

**141.** Customers and potential customers in the Who-Dat-support apparel & merchandise market rely on the 7-NOV-2012 notice and other knowledge about Case No. LAED 10-1333 c/w 10-2296, to the detriment of Who Dat Shoppe! LLC and to the benefit of Who Dat?, Inc.

**142.** In Case No. LAED 10-1333 c/w 10-2296, relevant issues were (1) the validity of Who Dat?, Inc.'s trademarks in light of abandonment, raised as both a defense and as a counterclaim, and (2) counterclaims to cancel or prevent the issuance of several WDI federal and Louisiana registrations of WHO DAT, WHO DAT NATION, TWO DAT, & 2 D@!. Therefore, a potential outcome of that case 10-1333 was the destruction of WDI's trademark portfolio and the barring of WDI's ability to file this case 13-6543 against Who Dat Shoppe! LLC. If the WDI trademarks had been adjudged to be invalid due to abandonment in 10-1333, that judgment would have inured to the benefit of all vendors of Who-Dat-support apparel & merchandise, including Who Dat Shoppe! LLC.

**143.** In Case No. LAED 10-1333 c/w 10-2296, all evidence except for Who Dat?, Inc.'s several affidavits indicated absence of trademark use in commerce for periods of greater than 3 years, which would have given the parties urging abandonment a statutory presumption of abandonment.

**144.** Who Dat?, Inc. filed several repeated material misstatements in affidavit form, in Case No. LAED 10-1333 c/w 10-2296, for the purposes of preventing summary judgment against WDI, and fostering summary judgment in favor of WDI, as set forth in detail here.

**145.** Steve Monistere of Who Dat?, Inc. signed a solemn affidavit on 18-FEB-2012 before a Texas notary, in which (page 6) Steve Monistere made the willful material misstatements:

27. As the president of Who Dat?, Inc., I have personal knowledge that Who Dat?, Inc. has consistently and continuously used the trademark "WHO DAT", "WHO DAT?", and "WHO DAT!" from 1983 to the present by distributing, selling, manufacturing, licensing, and offering products, goods, services, entertainment, music cd's, records, and albums, food and merchandise under those trademarks;

28. Even during lean years when "WHO DAT" merchandise was not selling well, Who Dat?, Inc. was still offering and producing goods and services, entertainment, usic *[sic]* cd's,

records, and albums, and other merchandise under the marks, "WHO DAT", "WHO DAT?", "WHO DAT!", or derivations of that phrase.

29. From 1983 to the present, even during lean years when "WHO DAT" merchandise was not selling well, Who Dat?, Inc. was still offering, promoting, and selling goods and services, entertainment, music cd's, records, and albums, and other merchandise under the marks, "WHO DAT", "WHO DAT?", "WHO DAT!", or derivations of that phrase.

30. Since 1983 to the present, Who Dat?, Inc. has continuously used the marks of "WHO DAT", "WHO DAT?", "WHO DAT!" and derivations of that phrase on goods and services and has never abandoned or intended to abandon its use of these marks.

**146.** Sal Monistere of Who Dat?, Inc. signed a solemn affidavit on 17-FEB-2012 before a Texas notary, in which (page 5) Sal Monistere made the willful material misstatements:

22. As the vice-president of Who Dat?, Inc., I have personal knowledge that Who Dat?, Inc. has consistently and continuously used the trademark "WHO DAT", "WHO DAT?", and "WHO DAT!" from 1983 to the present by distributing, selling, manufacturing, and offering products, goods, services, entertainment, music cd's, records, and albums, food and merchandise under those trademarks;

23. Since 1983 to the present, even during lean years when "WHO DAT" merchandise was not selling well, Who Dat?, Inc. was still offering and producing goods and services, entertainment, music cd's, records, and albums, and other merchandise under the marks, "WHO DAT", "WHO DAT?", "WHO DAT!", or derivations of that phrase.

24. Since 1983 to the present, Who Dat?, Inc. has continuously used the marks of "WHO DAT", "WHO DAT?", "WHO DAT!" and derivations of that phrase on goods and services and has never abandoned or intended to abandon its use of these marks.

**147.** Lucy Monistere, the mother of Steve and Sal, signed a solemn affidavit on 11-FEB-2010 before a Texas notary, in which (page 1) Lucy Monistere made the willful material misstatements:

6. At all times from January 1, 1988 through mid June of 2002 Lucy and Dominic Monistere have offered for sale Who Dat? Inc.'s merchandise to the general public. *[…]*

8. Although sales were slow for a number of years, I sold some of Who Dat?, Inc.'s "Who Dat" merchandise every year since 1988 until 2002.

148.  The 18-FEB-2012 Steve Monistere statement, the 17-FEB-2012 Sal Monistere statement, and the 11-FEB-2010 Lucy Monistere statement were misstatements because Who Dat?, Inc. had in fact abandoned any trademarks, had made an improper in-gross transfer of naked trademark rights which operated as an express abandonment, had failed to police marks from 1993 through late-2009, had not made any sales of apparel or non-music merchandise of any kind, and had its corporate charter revoked because of years of inactivity, as set forth in detail above.

149.  Pam Randazza of the Black & Gold Shop signed a solemn affidavit on 17-FEB-2012 before a Louisiana notary, in which (pages 2–3) Pam Randazza made the material misstatements:

6. Since 1992, when I first opened the Black & Gold Shop, I have continuously bought goods and merchandize from Who Dat?, Inc. or their licensees, which contained the phrase "Who Dat?" or some variation of that phrase, with the Who Dat?, Inc. trademark; *[…]*

8. Since I first opened the Black & Gold Shop to the present, I have always used Who Dat?, Inc. or one of its licensees as a source to purchase merchandize which contained the phrase, "Who Dat?" or a variation of that phrase, with the Who Dat?, Inc. trademark;

9. Since I first opened the Black & Gold Shop to the present, I have known that Who Dat?, Inc. was the source for purchasing merchandize and items that contained the phrase "Who Dat?" or a variation of that phrase, and that I could buy such items or merchandize either directly from Who Dat?, Inc. or one of its licensees, which have the Who Dat?, Inc. trademark.

150.  The 17-FEB-2012 Pam Randazza statement was a misstatement because the invoices showed, and Pam Randazza later acknowledged, that except for orders invoiced 8-OCT-1992, 1-SEP-1992, & 9-SEP-1992, the year Black & Gold Shop opened, for a total of 48 t-shirts, and a single order invoiced 28-FEB-2010, for 456 t-shirts, Pam Randazza did not order or purchase anything from Who Dat?, Inc. from 1993 through 2010.

**151.** Additional sworn statements were made by Frank Fortunato on 11-FEB-2010, John Mayeaux on 15-FEB-2010, & Warren Hildebrand on 12-FEB-2010, all stating that at all times since 1-JAN-1988, their businesses had offered for sale Who Dat?, Inc.'s merchandise to the general public.

**152.** The sworn statements by Frank Fortunato on 11-FEB-2010, John Mayeaux on 15-FEB-2010, & Warren Hildebrand on 12-FEB-2010 were all misstatements because invoices showed that no such merchandise was ordered or purchased from Who Dat?, Inc. for significant periods of many years from 1993 through 2009.

**153.** The statements by Steve Monistere on 18-FEB-2012, Sal Monistere on 17-FEB-2012, Lucy Monistere on 11-FEB-2010, Pam Randazza on 17-FEB-2012, Frank Fortunato on 11-FEB-2010, John Mayeaux on 15-FEB-2010, & Warren Hildebrand on 12-FEB-2010 were material in Case No. LAED 10-1333 c/w 10-2296 because 3 different opponents had filed motions for summary judgment, arguing abandonment, and Who Dat?, Inc. relied on the statements in opposing.

**154.** On 20-FEB-2012, in Case No. LAED 10-1333 c/w 10-2296, in opposition to Who Dat Yat Chat's motion for summary judgment, Who Dat?, Inc.'s attorneys Brandon J. Frank and Gregory D. Latham electronically filed (Rec.Doc.LAED-10-1333-205) in Court the sworn material misstatements of Steve Monistere on 18-FEB-2012, Sal Monistere on 17-FEB-2012, Lucy Monistere on 11-FEB-2010, Pam Randazza on 17-FEB-2012, Frank Fortunato on 11-FEB-2010, John Mayeaux on 15-FEB-2010, & Warren Hildebrand on 12-FEB-2010, and relied on those sworn material misstatements in Who Dat?, Inc.'s opposition to Who Dat Yat Chat's MSJ.

**155.** On 20-FEB-2012, in Case No. LAED 10-1333 c/w 10-2296, in opposition to Fleurty Girl, LLC's motion for summary judgment, Who Dat?, Inc.'s attorneys Brandon J. Frank and Gregory D. Latham electronically filed (Rec.Doc.LAED-10-1333-206) in Court the sworn material misstatements of Steve Monistere on 18-FEB-2012, Sal Monistere on 17-FEB-2012, Lucy Monistere on 11-FEB-2010, Pam Randazza on 17-FEB-2012, Frank Fortunato on 11-FEB-2010, John Mayeaux on 15-FEB-2010, & Warren Hildebrand on 12-FEB-2010, and relied on those sworn material misstatements in Who Dat?, Inc.'s opposition to Fleurty Girl, LLC's MSJ.

**156.** On 20-FEB-2012, in Case No. LAED 10-1333 c/w 10-2296, in opposition to Storyville Apparel LLC's motion for partial summary judgment, Who Dat?, Inc.'s attorneys Brandon J. Frank and Gregory D. Latham electronically filed (Rec.Doc.LAED-10-1333-207) in Court the sworn material misstatements of Steve Monistere on 18-FEB-2012, Sal Monistere on 17-FEB-2012, Lucy Monistere on 11-FEB-2010, Pam Randazza on 17-FEB-2012, Frank Fortunato on 11-FEB-2010, John Mayeaux on 15-FEB-2010, & Warren Hildebrand on 12-FEB-2010, and relied on those sworn material misstatements in Who Dat?, Inc.'s opposition to Storyville Apparel LLC's MPSJ.

**157.** The Court in Case No. LAED 10-1333 c/w 10-2296, in denying the 3 motions for summary judgement, expressly relied on the sworn affidavits, writing "WDI has submitted affidavits that, for summary judgment purposes, establish both the affixment of the phrase "Who Dat" to and the sale of clothing items from the late 1980s until recently", and treating the affidavits at length on pages 28–30 of the Court's 3-APR-2012 Order (Rec.Doc.LAED-10-1333-262).

**158.** On 8-MAY-2012 in Case No. LAED 10-1333 c/w 10-2296, Who Dat?, Inc. attorneys Brandon J. Frank & Gregory D. Latham electronically filed a Motion for Partial Summary Judgment Dismissing Affirmative Defenses of Functionality and Abandonment (Rec.Doc.LAED-10-1333-312) to which was attached, and which relied on, a new affidavit from Steve Monistere on 8-MAY-2012, a previously unseen affidavit from William Angelini on 4-NOV-2010, and the already-seen affidavits from Frank Fortunato on 11-FEB-2010, Pam Randazza on 17-FEB-2012, & Warren Hildebrand on 12-FEB-2010.

**159.** The previously unseen affidavit from William Angelini on 4-NOV-2010 filed in Court 8-MAY-2012 made the material misstatement "I sold some of Who Dat?, Inc.'s "Who Dat" merchandise every year since 1988 and until 2004".

**160.** The new sworn affidavit signed by Steve Monistere on 8-MAY-2012 filed in Court 8-MAY-2012 made the willful material misstatements:

> 5. Since 1983, WDI has continuously used the Who Dat Marks in connection with the sale of its goods and services. WDI has never discontinued use of the Who Dat Marks. Since

forming the company, all goods and services offered for sale and sold by WDI have been branded with the Who Dat Marks. *[…]*

12. Since 1992, WDI (or WDI's licensed printers) sold Who Dat branded merchandise to the Black & Gold Shop, a sports apparel store located in Metairie, Louisiana, for resale to the public. From 1992 through the present day, The Black & Gold Shop has continuously offered for sale and sold merchandise incorporating the Who Dat Marks.

**161.** The 8-MAY-2012 Steve Monistere statement was a misstatement because of the reasons stated above.

**162.** The misstatements from Steve Monistere on 8-MAY-2012, William Angelini on 4-NOV-2010, Frank Fortunato on 11-FEB-2010, Pam Randazza on 17-FEB-2012, & Warren Hildebrand on 12-FEB-2010 were material because Who Dat?, Inc. relied on the affidavits in the MPSJ.

**163.** Steve Monistere swore out yet another affidavit on 25-MAY-2012 in which he made the willful material misstatements:

3. Every year beginning in 1983 and continuing through 2012, WDI offered for sale and sold to its licensees and customers t-shirts incorporating the Who Dat? trademark.

4. WDI has continuously offered for sale and sold items such as necklaces, keychains and buttons/pins since at least as early as 1987. Every year since 1987, WDI has sold some of those items.

**164.** The 25-MAY-2012 Steve Monistere statement was a misstatement because of the reasons stated above, and was material because Who Dat?, Inc. relied on it.

**165.** On 28-MAY-2012, in Case No. LAED 10-1333 c/w 10-2296, Who Dat?, Inc.'s attorneys Gregory D. Latham and Brandon J. Frank electronically filed (Rec.Doc.LAED-10-1333-333) in Court the sworn material misstatement of Steve Monistere on 25-MAY-2012, and relied on the sworn material misstatement in argument.

**166.** The Court in Case No. LAED 10-1333 c/w 10-2296 expressly relied on the sworn affidavits and treated the affidavits at length on pages 25–29 of its 8-JUN-2012 Order (Rec.Doc.LAED-10-1333-351).

**167.** The several repeated material misstatements filed in court by Who Dat?, Inc. in Case No. LAED 10-1333 c/w 10-2296 caused that Court to deny a summary judgment of invalidity due to abondonment of WDI's purported trademarks, which would have inured to the benefit of Who Dat Shoppe! LLC and would have barred this 13-6543 litigation.

**168.** The outcome of Case No. LAED 10-1333 c/w 10-2296, brought about by Who Dat?, Inc.'s willful material misstatements, and Who Dat?, Inc.'s 7-NOV-2012 publication of that outcome, have proximately caused injury to Who Dat Shoppe! LLC, as set forth.

*USPTO TTAB Cancellation 92051559, WHO DAT? BLUES BAND in Class 041*

**169.** Who Dat Shoppe! LLC relied on Who Dat?, Inc.'s facially valid federal trademark Registration No. 2,890,070 for WHO DAT? BLUES BAND in evaluating WDI's demands.

**170.** Customers and potential customers in the Who-Dat-support apparel & merchandise market rely on the facially valid federal trademark Registration No. 2,890,070 for WHO DAT? BLUES BAND, to the detriment of Who Dat Shoppe! LLC and to the benefit of Who Dat?, Inc.

**171.** Who Dat?, Inc. has leveraged its ill-gotten ownership of Registration No. 2,890,070 for WHO DAT? BLUES BAND by asserting the registration in all subsequent applications to the USPTO, all subsequent litigation, and all subsequent cease-and-desist threats.

**172.** The mark WHO DAT? BLUES BAND, Registration No. 2,890,070, for "entertainment, namely, live performance by a musical band" in Class 041 was successfully registered in the USPTO by Ronnie Lee Parker of Michigan in 2004, during the long period of time when Who Dat?, Inc. was not in business and was not making commercial use of any WHO DAT mark.

**173.** On 6-OCT-2009, Who Dat?, Inc. filed in the USPTO TTAB Cancellation No. 92051559, an adjudicatory proceeding before a federal agency, against Registration No. 2,890,070 for WHO DAT? BLUES BAND, owned by Ronnie Lee Parker of Michigan.

**174.** Who Dat?, Inc.'s 6-OCT-2009 Petition for Cancellation in Cancellation No. 92051559 contained the statement:

2. Petitioner has used the mark WHO DAT? for music and musical performances long prior to the alleged date of first use by Registrant. Such use by Petitioner has been continuous

to the present date. Petitioner has expended considerable effort and expense in promoting its name/mark WHO DAT? and the music sold under such mark, with the result that the purchasing public, *[sic]* rely upon and recognize the goods/services of Petitioner by such mark. Petitioner has established goodwill in their mark.

175. The 6-OCT-2009 statement in USPTO TTAB Cancellation No. 92051559 was a willful material misstatement because Who Dat?, Inc. had abandoned any trademark rights, as stated above, because the statement was necessary to the cancellation determination to be made by the USPTO TTAB, and because Who Dat?, Inc. knew the statement to be false.

176. Who Dat?, Inc. reached a settlement with Ronnie Lee Parker and the legitimate Who Dat? Blues Band whereby the ownership of Registration No. 2,890,070 for WHO DAT? BLUES BAND was transferred to WDI, and a "royalty free, nonexclusive license to use the name and/or mark WHO DAT? BLUES BAND in connection with live musical performances in the state of Michigan, Ohio, and/or any states that said band has performed *[sic]* prior to September, 2009 and use the mark in the domain name www.whodatbluesband.com in connection with live musical performances and promotions of the band" was simultaneously granted, in the settlement agreement filed in USPTO TTAB Cancellation No. 92051559 on 16-DEC-2009 with a Withdrawal of Cancellation.

177. The settlement left the legitimate Who Dat? Blues Band in essentially the same position they were in before, but gave Who Dat?, Inc. ownership of a federal registration that it otherwise lacked, and to which it had no right but for the willful material misstatements made to the USPTO TTAB in threatening, intimidating, and extorting the registration from its legitimate owner.

178. The outcome of USPTO TTAB Cancellation No. 92051559, Who Dat?, Inc.'s ownership of Registration No. 2,890,070 for WHO DAT? BLUES BAND, brought about by Who Dat?, Inc.'s willful material misstatements, has proximately caused injury to Who Dat Shoppe! LLC, as set forth.

*USPTO TTAB Cancellation 92055419, WHO DAT in Class 025*

179. Who Dat Shoppe! LLC relied on Who Dat?, Inc.'s successful Cancellation No. 92055419 of federal trademark Registration No. 4,118,751 for WHO DAT in evaluating WDI's demands.

**180.** The mark WHO DAT, Registration No. 4,118,751, for apparel in Class 025 was successfully registered in the USPTO in 2012 by William Myers of New York, claiming first use in 2004, during the long period of time when Who Dat?, Inc. was not in business and was not making commercial use of any WHO DAT mark.

**181.** On 30-MAR-2012, attorney Brandon J. Frank on behalf of Who Dat?, Inc. filed in the USPTO TTAB Cancellation No. 92055419, an adjudicatory proceeding before a federal agency, against Registration No. 4,118,751 for WHO DAT, owned by William Myers of New York.

**182.** Who Dat?, Inc.'s 30-MAR-2012 Petition for Cancellation in Cancellation No. 92055419 contained several statements that WDI used the mark WHO DAT? continuously since 1983.

**183.** The 30-MAR-2012 statements in USPTO TTAB Cancellation No. 92055419 were willful material misstatements because Who Dat?, Inc. had abandoned any trademark rights, as stated above, because the statement was necessary to the cancellation determination to be made by the USPTO TTAB, and because Who Dat?, Inc. knew the statement to be false.

**184.** Who Dat?, Inc. in Cancellation No. 92055419 claimed ownership of Registration No. 2,890,070 for WHO DAT? BLUES BAND, which was obtained by fraud as set forth above.

**185.** The owner William Myers of New York defaulted in Cancellation No. 92055419, and Registration No. 4,118,751 for WHO DAT in Class 025 was cancelled.

**186.** The outcome of USPTO TTAB Cancellation No. 92055419, cancellation of Registration No. 4,118,751 for WHO DAT, brought about by Who Dat?, Inc.'s willful material misstatements, has proximately caused injury to Who Dat Shoppe! LLC, as set forth.

*USPTO 77-983,139, WHO DAT? in Class 009*

**187.** Who Dat Shoppe! LLC relied on Who Dat?, Inc.'s facially valid federal trademark Registration No. 4,310,960 for WHO DAT? in evaluating WDI's demands.

**188.** Customers and potential customers in the Who-Dat-support apparel & merchandise market rely on the facially valid federal trademark Registration No. 4,310,960 for WHO DAT?, to the detriment of Who Dat Shoppe! LLC and to the benefit of Who Dat?, Inc.

189. On 7-JAN-2010, Who Dat?, Inc.'s attorney Brandon J. Frank electronically filed in the USPTO a trademark application that would become divisional Serial No. 77-983,139, for WHO DAT? for "Apparatus for recording, transmission, processing and reproduction of sound, images or data; Audio and video recordings featuring music and entertainment and cultural events; CD sleeves; Compact discs featuring music; Digital music downloadable from the Internet; Downloadable MP3 files, MP3 recordings, on-line discussion boards, webcasts, webinars and podcasts featuring music, audio books and news broadcasts; Downloadable multimedia file containing artwork, text, audio, video, games, and Internet Web links relating to music and entertainment and cultural events; Labels carrying magnetically, optically, or electronically recorded or encoded information; Musical sound recordings; Musical video recordings; Phonograph record sleeves; Phonograph records featuring music" in Class 009, which proceeded to Registration No. 4,310,960, registered 2-APR-2013.

190. Who Dat?, Inc. did not disclose to the USPTO at any time before registration that WHO DAT was the subject of a pending civil action.

191. Application No. 77-983,139 claimed ownership of Registration No. 2,890,070 for WHO DAT? BLUES BAND, which was obtained by fraud as set forth above.

192. The 7-JAN-2010 77-983,139 trademark application contained the statement "the mark was first used at least as early as 10/14/1983, and first used in commerce at least as early as 10/26/1983, and is now in use in such commerce".

193. The 7-JAN-2010 77-983,139 trademark application statement was a willful material misstatement because most of the listed goods were not used nor used in commerce in 1983, nor at the time of filing the application, nor at any time whatsoever, and false because the few goods that were ever sold— phonograph records— had been abandoned and not used in commerce for a significant number of years before the filing of the application.

194. The sworn Declaration in the 7-JAN-2010 77-983,139 trademark application stated Who Dat?, Inc. was the owner of the trademark sought to be registered, and that "no other person, firm, corporation, or association has the right to use the mark in commerce".

**195.** The sworn Declaration in the 7-JAN-2010 77-983,139 trademark application was a willful material misstatement because Who Dat?, Inc. had abandoned and did not own the trademark, the NFL and the Saints football team had registered and had presumptive rights to the mark, the NFL and the football team had acknowledged in a 2-FEB-2010 letter that all businesses in the region had the right to use the slogan "Who Dat", and the slogan was in general, generic use by a large number of businesses and organizations, all facts known to Who Dat?, Inc.

**196.** The outcome of USPTO trademark application No. 77-983,139, Registration No. 4,310,960 for WHO DAT?, brought about by Who Dat?, Inc.'s willful material misstatements, has proximately caused injury to Who Dat Shoppe! LLC, as set forth.

*USPTO 77-907,193, WHO DAT? in Class 025*

**197.** Who Dat Shoppe! LLC relied on Who Dat?, Inc.'s facially valid federal trademark Registration No. 4,385,857 for WHO DAT? in evaluating WDI's demands.

**198.** Customers and potential customers in the Who-Dat-support apparel & merchandise market rely on the facially valid federal trademark Registration No. 4,385,857 for WHO DAT?, to the detriment of Who Dat Shoppe! LLC and to the benefit of Who Dat?, Inc.

**199.** On 7-JAN-2010, Who Dat?, Inc.'s attorney Brandon J. Frank electronically filed in the USPTO a trademark application, Serial No. 77-907,193, for WHO DAT? for "Bottoms; Boxer briefs; Boxer shorts; Caps; Hats; Head scarves; Headbands; Headwear; Knit shirts; Ladies' underwear; Long-sleeved shirts; Men's underwear; Panties; Panties, shorts and briefs; Pants; Scarves; Shirts and short-sleeved shirts; Short-sleeved or long-sleeved t-shirts; Suspenders; Sweat shirts; T-shirts; Underwear; Visors" in Class 025, which proceeded to Registration No. 4,385,857, registered 20-AUG-2013.

**200.** Application No. 77-907,193 claimed ownership of Registration No. 2,890,070 for WHO DAT? BLUES BAND, which was obtained by fraud as set forth above.

**201.** The 7-JAN-2010 77-907,193 trademark application contained the statement "the mark was first used at least as early as 10/14/1983, and first used in commerce at least as early as 10/26/1983, and is now in use in such commerce".

**202.** The 7-JAN-2010 77-907,193 trademark application statement was a willful material misstatement because most of the listed goods were not used nor used in commerce in 1983, nor at the time of filing the application, nor at any time whatsoever, and false because the few goods that were ever sold— t-shirts— had been abandoned and not used in commerce for a significant number of years before the filing of the application.

**203.** The sworn Declaration in the 7-JAN-2010 77-907,193 trademark application stated Who Dat?, Inc. was the owner of the trademark sought to be registered, and that "no other person, firm, corporation, or association has the right to use the mark in commerce".

**204.** The sworn Declaration in the 7-JAN-2010 77-907,193 trademark application was a willful material misstatement because of the reasons stated above.

**205.** Who Dat?, Inc. did not disclose to the USPTO at any time before registration that WHO DAT was the subject of a pending civil action.

**206.** The outcome of USPTO trademark application No. 77-907,193, Registration No. 4,385,857 for WHO DAT?, brought about by Who Dat?, Inc.'s willful material misstatements, has proximately caused injury to Who Dat Shoppe! LLC, as set forth.

*USPTO 77-932,659, TWO DAT in Class 025*

**207.** Who Dat Shoppe! LLC relied on Who Dat?, Inc.'s facially valid federal trademark Registration No. 4,051,289 for TWO DAT in evaluating WDI's demands.

**208.** Customers and potential customers in the Who-Dat-support apparel & merchandise market rely on the facially valid federal trademark Registration No. 4,051,289 for TWO DAT, to the detriment of Who Dat Shoppe! LLC and to the benefit of Who Dat?, Inc.

**209.** On 10-FEB-2010, Who Dat?, Inc.'s attorney Brandon J. Frank electronically filed in the USPTO an "intent-to-use" trademark application, Serial No. 77-932,659, for TWO DAT for "Clothing, namely, t-shirts, hoodies, sweatshirts, bodysuits, bibs, tank tops, polo shirts, hats", changed to "Clothing, namely, t-shirts, hooded sweatshirts, sweatshirts, bodysuits, cloth bibs, tank tops, polo shirts, hats" in Class 025, which proceeded to Registration No. 4,051,289, registered 8-NOV-2011.

**210.** Application No. 77-932,659 claimed ownership of Registration No. 2,890,070 for WHO DAT? BLUES BAND, which was obtained by fraud as set forth above.

**211.** The 10-FEB-2010 77-932,659 trademark application statement was a willful material misstatement because Who Dat?, Inc. did not have a bona fide intent to sell all of the goods claimed, and did not have any plan for producing goods except the WDI-TS scheme for locking up the trademark rights.

**212.** The specimen of use eventually filed in Application 77-932,659 was a computer-generated, altered photo of the logo superimposed on a t-shirt, not a photo of an actual t-shirt with the logo.

**213.** The sworn Declaration in the 10-FEB-2010 77-932,659 trademark application stated Who Dat?, Inc. was the owner of the trademark sought to be registered, and that "no other person, firm, corporation, or association has the right to use the mark in commerce".

**214.** The sworn Declaration in the 10-FEB-2010 77-932,659 trademark application was a willful material misstatement because of the reasons stated above.

**215.** Who Dat?, Inc. did not disclose to the USPTO at any time before registration that TWO DAT was the subject of a pending civil action.

**216.** The outcome of USPTO trademark application No. 77-932,659, Registration No. 4,051,289 for TWO DAT, brought about by Who Dat?, Inc.'s willful material misstatements, has proximately caused injury to Who Dat Shoppe! LLC, as set forth.

*USPTO 85-113,096, TWO DAT! in Class 018*

**217.** Who Dat Shoppe! LLC relied on Who Dat?, Inc.'s facially valid federal trademark Registration No. 4,339,102 for TWO DAT! in evaluating WDI's demands.

**218.** Customers and potential customers in the Who-Dat-support apparel & merchandise market rely on the facially valid federal trademark Registration No. 4,339,102 for TWO DAT!, to the detriment of Who Dat Shoppe! LLC and to the benefit of Who Dat?, Inc.

**219.** On 22-AUG-2010, Who Dat?, Inc.'s attorney Brandon J. Frank electronically filed in the USPTO a trademark application, Serial No. 85-113,096 for TWO DAT! for "All purpose sport

bags; All-purpose carrying bags; Carry-all bags; Souvenir bags; Tote bags; Travel bags; Traveling bags" in Class 018, which proceeded to Registration No. 4,339,102, registered 21-MAY-2013.

220. The 22-AUG-2010 85-113,096 trademark application contained the statement "the mark was first used at least as early as 4/09/2010, and first used in commerce at least as early as 4/09/2010, and is now in use in such commerce".

221. The 22-AUG-2010 85-113,096 trademark application statement was a willful material misstatement because all or most of the listed goods were not used nor used in commerce at the time of filing the application.

222. The specimen of use filed with Application 85-113,096 was a computer-generated, altered photo of the logo superimposed on a bag, not a photo of an actual bag with the logo.

223. The sworn Declaration in the 22-AUG-2010 85-113,096 trademark application stated Who Dat?, Inc. was the owner of the trademark sought to be registered, and that "no other person, firm, corporation, or association has the right to use the mark in commerce".

224. The sworn Declaration in the 22-AUG-2010 85-113,096 trademark application was a willful material misstatement because of the reasons stated above.

225. The outcome of USPTO trademark application No. 85-113,096, Registration No. 4,339,102 for TWO DAT!, brought about by Who Dat?, Inc.'s willful material misstatements, has proximately caused injury to Who Dat Shoppe! LLC, as set forth.

*USPTO 85-113,102, WHO DAT in Classes 034 & 043*

226. Who Dat Shoppe! LLC relied on Who Dat?, Inc.'s federal trademark registration Application No. 85-113,102 for WHO DAT in evaluating WDI's demands.

227. Customers and potential customers in the Who-Dat-support apparel & merchandise market rely on the federal trademark registration Application No. 85-113,102 for WHO DAT, to the detriment of Who Dat Shoppe! LLC and to the benefit of Who Dat?, Inc.

228. On 23-AUG-2010, Who Dat?, Inc.'s attorney Brandon J. Frank electronically filed in the USPTO an "intent-to-use" trademark application, Serial No. 85-113,102, for WHO DAT for "Lighters for smokers; Lighters not of precious metal; Match boxes; Match boxes not of precious

metal; Match boxes of precious metal; Match holders; Smokers' articles, namely, cigar storage tubes; Tobacco jars; Tobacco pouches; Tobacco tins; Tobacco water pipes; Tobacco, cigars and cigarettes" in Class 034, and for "Arena services, namely, providing facilities for sports, concerts, conventions and exhibitions; Bar and restaurant services; Booking of catering services for others; Cafe and restaurant services; Charitable services, namely, providing child care for special needs children and their siblings; Charitable services, namely, providing food to needy persons; Charitable services, namely, providing potable water to those in need; Coffee and juice bar services; Coffee-house and snack-bar services; Consulting services in the field of hospitality; Leasing of metal and non-metal buildings for temporary use purposes; Making hotel reservations for others; Making reservations and bookings for others for accommodations and meals at health spas; Mobile cafe services for providing food and drink; Night club reservation services, namely, arranging for cocktails and table service reservations at night clubs and night club events; Provide a website for making reservations and booking of eco-lodging; Providing a database in the field of recipes and cooking information; Providing a web site featuring a searchable collection of alcoholic and non-alcoholic cocktail recipes; Providing a web site where users can post ratings, reviews and recommendations on wines for wine appreciation purposes; Providing advice to tourists and business travelers on hotel and restaurant destinations; Providing an online computer database to consumers concerning recipes, ingredients and cooking information; Providing banquet and social function facilities for special occasions; Providing information, news and commentary in the field of dining; Providing of food and drink; Providing on-line reviews of restaurants and hotels; Providing personalized information about hotels and temporary accommodations for travel via the Internet; Providing social meeting, banquet and social function facilities; Provision of conference, exhibition and meeting facilities; Provision of food and drink in restaurants; Restaurant services" in Class 043.

229. Application No. 85-113,102 claimed ownership of Registration No. 2,890,070 for WHO DAT? BLUES BAND, which was obtained by fraud as set forth above.

230. The 23-AUG-2010 85-113,102 trademark application statement was a willful material misstatement because Who Dat?, Inc. did not have a bona fide intent to sell all of the goods and

services claimed, and did not have any plan for producing goods or providing services except the WDI-TS scheme for locking up the trademark rights.

231. The sworn Declaration in the 23-AUG-2010 85-113,102 trademark application stated Who Dat?, Inc. was the owner of the trademark sought to be registered, and that "no other person, firm, corporation, or association has the right to use the mark in commerce".

232. The sworn Declaration in the 23-AUG-2010 85-113,102 trademark application was a willful material misstatement because of the reasons stated above.

233. The likely outcome of USPTO trademark registration Application No. 85-113,102 for WHO DAT, brought about by Who Dat?, Inc.'s willful material misstatements, threatens to proximately cause injury to Who Dat Shoppe! LLC, as set forth.

*USPTO 85-113,104, 2 D@! in Class 025*

234. Who Dat Shoppe! LLC relied on Who Dat?, Inc.'s federal trademark registration Application No. 85-113,104 for 2 D@! in evaluating WDI's demands.

235. Customers and potential customers in the Who-Dat-support apparel & merchandise market rely on the federal trademark registration Application No. 85-113,104 for 2 D@!, to the detriment of Who Dat Shoppe! LLC and to the benefit of Who Dat?, Inc.

236. On 23-AUG-2010, Who Dat?, Inc.'s attorney Brandon J. Frank electronically filed in the USPTO an "intent-to-use" trademark application, Serial No. 85-113,104, for 2 D@! for "Apparel for dancers, namely, tee shirts, sweatshirts, pants, leggings, shorts and jackets; Athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; Baseball caps and hats; Belts; Body shirts; Bottoms; Briefs; Button down shirts; Chef's hats; Children's and infant's apparel, namely, jumpers, overall sleepwear, pajamas, rompers and one-piece garments; Children's and infants' cloth bibs; Collared shirts; Dress pants; Dress shirts; Eyeshades; Gloves as clothing; Golf pants, shirts and skirts; Hats; Hats for infants, babies, toddlers and children; Headbands for clothing; Hooded sweat shirts; Jackets; Jerseys; Knit shirts; Ladies' underwear; Leather belts; Leather hats; Leather pants; Leather shirts; Long-sleeved shirts; Men's socks; Men's underwear; Night shirts; Panties; Panties, shorts and briefs; Polo shirts; Shirts; Shirts and short-sleeved shirts; Shirts for infants, babies, toddlers and children; Shirts for suits; Short-sleeved or long-

sleeved t-shirts; Shoulder wraps; Sleep pants; Sleep shirts; Slipper socks; Sock suspenders; Socks; Sport shirts; Sports caps and hats; Sports pants; Sports shirts; Sports shirts with short sleeves; Sweat pants; Sweat shirts; T-shirts; Thongs; Ties; Travel clothing contained in a package comprising reversible jackets, pants, skirts, tops and a belt or scarf; Turtle neck shirts; Underwear; Women's hats and hoods; Women's underwear; Woven or knitted underwear; Yoga pants; Yoga shirts" in Class 025.

237. Application No. 85-113,104 claimed ownership of Registration No. 2,890,070 for WHO DAT? BLUES BAND, which was obtained by fraud as set forth above.

238. The 23-AUG-2010 85-113,104 application statement was a willful material misstatement because Who Dat?, Inc. did not have a bona fide intent to sell all of the goods claimed, and did not have any plan for producing goods except the WDI-TS scheme for locking up the trademark rights.

239. The sworn Declaration in the 23-AUG-2010 85-113,104 trademark application stated Who Dat?, Inc. was the owner of the trademark sought to be registered, and that "no other person, firm, corporation, or association has the right to use the mark in commerce".

240. The sworn Declaration in the 23-AUG-2010 85-113,104 trademark application was a willful material misstatement because of the reasons stated above.

241. Who Dat?, Inc. did not disclose to the USPTO at any time that 2 D@! was the subject of a pending civil action.

242. The likely outcome of USPTO trademark registration Application No. 85-113,104 for 2 D@!, brought about by Who Dat?, Inc.'s willful material misstatements, threatens to proximately cause injury to Who Dat Shoppe! LLC, as set forth.

*USPTO 85-132,369, WHO DAT in Class 033*

243. Who Dat Shoppe! LLC relied on Who Dat?, Inc.'s facially valid federal trademark Registration No. 4,402,283 for WHO DAT in evaluating WDI's demands.

244. Customers and potential customers in the Who-Dat-support apparel & merchandise market rely on the facially valid federal trademark Registration No. 4,402,283 for WHO DAT, to the detriment of Who Dat Shoppe! LLC and to the benefit of Who Dat?, Inc.

245. On 17-SEP-2010, Who Dat?, Inc.'s attorney Brandon J. Frank electronically filed in the USPTO a trademark application, Serial No. 85-132,369, for WHO DAT for "alcoholic beverages except beers; prepared alcoholic cocktail; spirits" in Class 033, which proceeded to Registration No. 4,402,283, registered 17-SEP-2013.

246. Application No. 85-132,369 claimed ownership of Registration No. 2,890,070 for WHO DAT? BLUES BAND, which was obtained by fraud as set forth above.

247. The 17-SEP-2010 85-132,369 trademark application contained the statement "the mark was first used at least as early as 10/18/1983, and first used in commerce at least as early as 10/18/1983, and is now in use in such commerce".

248. The 17-SEP-2010 85-132,369 trademark application statement was a willful material misstatement because the listed goods were not used nor used in commerce after approximately 1993, nor used at the time of filing the application, and false because the mark had been abandoned and not used in commerce for a significant number of years before the filing of the application.

249. The specimen of use filed with Application 85-132,369 was a photocopy of the old sparkling wine label from the 1980s, which had not been offered nor sold since at least 1993.

250. The sworn Declaration in the 17-SEP-2010 85-132,369 trademark application stated Who Dat?, Inc. was the owner of the trademark sought to be registered, and that "no other person, firm, corporation, or association has the right to use the mark in commerce".

251. The sworn Declaration in the 17-SEP-2010 85-132,369 trademark application was a willful material misstatement because of the reasons stated above.

252. The outcome of USPTO trademark application No. 85-132,369, Registration No. 4,402,283 for WHO DAT, brought about by Who Dat?, Inc.'s willful material misstatements, has proximately caused injury to Who Dat Shoppe! LLC, as set forth.

*USPTO 86-050,118, WHO DAT in Class 030*

253. Who Dat Shoppe! LLC relied on Who Dat?, Inc.'s federal trademark registration Application No. 86-050,118 for WHO DAT? in evaluating WDI's demands.

**254.** Customers and potential customers in the Who-Dat-support apparel & merchandise market rely on the federal trademark registration Application No. 86-050,118 for WHO DAT?, to the detriment of Who Dat Shoppe! LLC and to the benefit of Who Dat?, Inc.

**255.** On 28-AUG-2013, Who Dat?, Inc.'s attorney Gregory D. Latham electronically filed in the USPTO a trademark application, Serial No. 86-050,118, for WHO DAT? for "Bakery products; Cakes; Coffee; Hamburger sandwiches; Pralines; Seasonings; Spices" in Class 030.

**256.** Application No. 86-050,118 claimed ownership of Registration No. 2,890,070 for WHO DAT? BLUES BAND, Registration No. 4,310,960 for WHO DAT?, & Registration No. 4,385,857 for WHO DAT?, which were obtained by fraud as set forth above.

**257.** The 28-AUG-2013 86-050,118 trademark application contained the statement "the mark was first used at least as early as 09/20/2009, and first used in commerce at least as early as 09/20/2009, and is now in use in such commerce".

**258.** The 28-AUG-2013 86-050,118 trademark application statement was a willful material misstatement because the listed goods were not used nor used in commerce at the time of filing the application, nor in 2009, nor at any time.

**259.** The specimens of use filed with Application 86-050,118 were photos of coffee bags and spice containers with mock-up labels generated by a computer and color printer, not photos of actual goods used in commerce.

**260.** The sworn Declaration in the 28-AUG-2013 86-050,118 trademark application stated Who Dat?, Inc. was the owner of the trademark sought to be registered, and that "no other person, firm, corporation, or association has the right to use the mark in commerce".

**261.** The sworn Declaration in the 28-AUG-2013 86-050,118 trademark application was a willful material misstatement because of the reasons stated above.

**262.** Who Dat?, Inc. did not disclose to the USPTO at any time that WHO DAT was the subject of a pending civil action.

**263.** The likely outcome of USPTO trademark registration Application No. 86-050,118 for WHO DAT?, brought about by Who Dat?, Inc.'s willful material misstatements, threatens to proximately cause injury to Who Dat Shoppe! LLC, as set forth.

*Louisiana 62-1132, WHO DAT NATION in Classes 25 & 35*

**264.** Who Dat Shoppe! LLC relied on Who Dat?, Inc.'s facially valid Louisiana state Trade Mark Registration No. 62-1132 for WHO DAT NATION in evaluating WDI's demands.

**265.** Customers and potential customers in the Who-Dat-support apparel & merchandise market rely on the facially valid Louisiana state Trade Mark Registration No. 62-1132, to the detriment of Who Dat Shoppe! LLC and to the benefit of Who Dat?, Inc.

**266.** Who Dat?, Inc., on an application for state trademark registration sent to the Louisiana Secretary of State via U.S. Mail or electronically over interstate wire on or about 23-NOV-2009, comprising a sworn statement claiming ownership by a representative of Who Dat?, Inc., obtained Louisiana state Trade Mark Registration No. 62-1132 for WHO DAT NATION for "advertising & business, promotions, clothing", in Class 25 for clothing, and Class 35 for miscellaneous, with a claimed date first used and date first used in Louisiana of 19-NOV-2009, registered 23-NOV-2009.

**267.** The 23-NOV-2009 62-1132 sworn claim of ownership was a willful material misstatement because the slogan "Who Dat Nation" was in widespread use by the public, the media, and Who-Dat-support apparel & merchandise vendors several years before WDI's claimed 19-NOV-2009 date of first use, and was a generic term incapable of indicating any source of goods.

**268.** Who Dat?, Inc. did not disclose to the Louisiana Secretary of State at any time that WHO DAT NATION was the subject of a pending civil action.

**269.** The outcome of Louisiana state Trade Mark Registration No. 62-1132 for WHO DAT NATION, brought about by Who Dat?, Inc.'s willful material misstatements, has proximately caused injury to Who Dat Shoppe! LLC, as set forth.

*Louisiana 62-1569, WHO DAT? in Class 33*

**270.** Who Dat Shoppe! LLC relied on Who Dat?, Inc.'s facially valid Louisiana state Trade Mark Registration No. 62-1569 for WHO DAT? in evaluating WDI's demands.

**271.** Customers and potential customers in the Who-Dat-support apparel & merchandise market rely on the facially valid Louisiana state Trade Mark Registration No. 62-1569 for WHO DAT?, to the detriment of Who Dat Shoppe! LLC and to the benefit of Who Dat?, Inc.

**272.** Who Dat?, Inc., on an application for state trademark registration sent to the Louisiana Secretary of State via U.S. Mail or electronically over interstate wire on or about 5-JAN-2010, comprising a sworn statement claiming ownership by a representative of Who Dat?, Inc., obtained Louisiana state Trade Mark Registration No. 62-1569 for WHO DAT? for "wines, spirits", in Class 33 for wines & spirits, with a claimed date first used and date first used in Louisiana of 18-OCT-1983, registered 5-JAN-2010.

**273.** The 5-JAN-2010 62-1569 trademark application sworn statement was a willful material misstatement because the listed goods were not used nor used in commerce after approximately 1993, nor used at the time of filing the application, and false because the mark had been abandoned and not used in commerce for a significant number of years before the filing of the application.

**274.** The 5-JAN-2010 62-1569 sworn claim of ownership was a willful material misstatement because the slogan "Who Dat" was in widespread use by the public, the media, and Who-Dat-support apparel & merchandise vendors for several years, was a generic term incapable of indicating any source of goods, and had been abandoned by Who Dat?, Inc., as set forth.

**275.** Who Dat?, Inc. did not disclose to the Louisiana Secretary of State at any time that WHO DAT was the subject of a pending civil action.

**276.** The outcome of Louisiana state Trade Mark Registration No. 62-1569 for WHO DAT?, brought about by Who Dat?, Inc.'s willful material misstatements, has proximately caused injury to Who Dat Shoppe! LLC, as set forth.

*Louisiana 63-4800, WHO DAT? in Classes 06, 17, 18, 20, 24, 25, 26, & 34*

**277.** Who Dat Shoppe! LLC relied on Who Dat?, Inc.'s facially valid Louisiana state Trade Mark Registration No. 63-4800 for WHO DAT? in evaluating WDI's demands.

**278.** Customers and potential customers in the Who-Dat-support apparel & merchandise market rely on the facially valid Louisiana state Trade Mark Registration No. 63-4800 for WHO DAT?, to the detriment of Who Dat Shoppe! LLC and to the benefit of Who Dat?, Inc.

**279.** Who Dat?, Inc., on an application for state trademark registration sent to the Louisiana Secretary of State via U.S. Mail or electronically over interstate wire on or about 7-FEB-2012, comprising a sworn statement claiming ownership by a representative of Who Dat?, Inc., obtained Louisiana state Trade Mark Registration No. 63-4800 for WHO DAT? for "advertising, business, promotional, misc, licensing", in Class 06 for metal goods, Class 17 for rubber goods, Class 18 for leather goods, Class 20 for furniture & articles not otherwise classified, Class 24 for fabrics, Class 25 for clothing, Class 26 for fancy goods, and Class 34 for smokers' articles, with a claimed date first used and date first used in Louisiana of 31-OCT-1983, registered 7-FEB-2012.

**280.** The 7-FEB-2012 63-4800 trademark application sworn statement was a willful material misstatement because most of the listed goods and classes of goods had never been used nor used in commerce by Who Dat?, Inc., and the remaining listed goods were not used nor used in commerce after approximately 1993, nor used at the time of filing the application, and false because the mark had been abandoned and not used in commerce for a significant number of years before the filing of the application.

**281.** The 7-FEB-2012 63-4800 sworn claim of ownership was a willful material misstatement because the slogan "Who Dat" was in widespread use by the public, the media, and Who-Dat-support apparel & merchandise vendors for several years, was a generic term incapable of indicating any source of goods, and had been abandoned by Who Dat?, Inc., as set forth.

**282.** The outcome of Louisiana state Trade Mark Registration No. 63-4800 for WHO DAT?, brought about by Who Dat?, Inc.'s willful material misstatements, has proximately caused injury to Who Dat Shoppe! LLC, as set forth.

*Louisiana 63-4828, WHO DAT NATION in Class 42*

**283.** Who Dat Shoppe! LLC relied on Who Dat?, Inc.'s facially valid Louisiana state Service Mark Registration No. 63-4828 for WHO DAT NATION in evaluating WDI's demands.

**284.** Customers and potential customers in the Who-Dat-support apparel & merchandise market rely on the facially valid Louisiana state Service Mark Registration No. 63-4828 for WHO DAT NATION, to the detriment of Who Dat Shoppe! LLC and to the benefit of Who Dat?, Inc.

**285.** Who Dat?, Inc., on an application for state trademark registration sent to the Louisiana Secretary of State via U.S. Mail or electronically over interstate wire on or about 8-FEB-2012, comprising a sworn statement claiming ownership by a representative of Who Dat?, Inc., obtained Louisiana state Service Mark Registration No. 63-4828 for WHO DAT NATION for "miscellaneous promotional activities, advertising & business", in Class 42 for miscellaneous, with a claimed date first used and date first used in Louisiana of 19-NOV-2009, registered 8-FEB-2012.

**286.** The 8-FEB-2012 63-4828 sworn claim of ownership was a willful material misstatement because the slogan "Who Dat Nation" was in widespread use by the public, the media, and Who-Dat-support apparel & merchandise vendors several years before WDI's claimed 19-NOV-2009 date of first use, and was a generic term incapable of indicating any source of goods.

**287.** The outcome of Louisiana state Service Mark Registration No. 63-4828 for WHO DAT NATION, brought about by Who Dat?, Inc.'s willful material misstatements, has proximately caused injury to Who Dat Shoppe! LLC, as set forth.

**Allegation re money received by Who Dat?, Inc. as a result of unlawful activity**

**288.** Who Dat?, Inc. claims to have extensively licensed goods and services under its purported trademarks, which provides an income stream and profits resulting from WDI's unlawfully obtained trademark rights and from WDI's unlawful threats, demands, extortion, and abusive litigation.

**Allegations re damages**

**289.** Plaintiff Who Dat Shoppe! LLC suffered injury to its business and property, and damages, including but not limited to reputational injury and lost sales to potential customers who relied on Who Dat?, Inc.'s fraudulent assertions and registrations of trademark rights in WHO DAT, WHO DAT NATION, TWO DAT, & 2 D@!, proximately caused by Who Dat?, Inc.'s and its attorneys' unlawful trademark registration procurement, enforcement, and litigation tactics as described above.

**290.** Defendant Who Dat?, Inc.'s assertions about bogus trademarks in WHO DAT, WHO DAT NATION, TWO DAT, and 2 D@! are fraudulent or misleading statements to Plaintiff's and Defendant's existing and potential customers.

**291.** Defendant Who Dat?, Inc. has disparaged and tarnished Plaintiff Who Dat Shoppe! LLC's business regarding bogus WHO DAT, WHO DAT NATION, TWO DAT, and 2 D@! trademarks.

**292.** Plaintiff Who Dat Shoppe! LLC claims damages, cognizable injury, and ascertainable loss resulting from Defendant Who Dat?, Inc.'s complained-of actions, including but not limited to the costs and lost profits resulting from not being able to offer or sell merchandise bearing the slogans "Who Dat", "Who Dat Nation", "Two Dat" or "2 D@!" to customers without exposure to a claim of trademark infringement from Defendant, and the costs and lost profits resulting from customers assuming that Defendant Who Dat?, Inc.'s bogus trademarks are valid, and purchasing from WDI instead of from WDShop.

### Jury Demand

**293.** Who Dat Shoppe! LLC demands trial by jury of all issues so triable.

### Federal Claims

### Civil-RICO Claim

### Count 1, Civil-RICO Obstruction of Justice, Extortion, & Fraud.

294. As set forth with particularity above, the WDI Trademark Scheme (WDI-TS) for acquisition, maintenance, enforcement, and litigation of bogus trademark monopoly and exclusive rights, in the USPTO federal agency and in the Courts, and the obstructive and extortive actions by the **WDI Enterprise** to gain, maintain, and enforce those bogus rights, is an ongoing pattern of racketeering activity, obstructive of justice, extortive, and fraudulent under **18 USC §1503, §1512, §1951, §1341,** & **§1343,** & **La. R.S. 14:66** & **La. R.S. 51:123**.

295. Who Dat?, Inc. is operated as the **WDI Enterprise** for the purpose of conducting the WDI-TS, in addition to WDI's other presumably legitimate activities.

296. The actions of Defendant **Who Dat?, Inc.,** in receiving income derived, directly or indirectly, from the WDI-TS, violate **18 USC §1962(a)**, as set forth above.

297. The actions of Defendants **Steve Monistere** and **Sal Monistere**, in conducting and participating in the WDI-TS, violate **18 USC §1962(c)**, as set forth above.

298. The actions of attorney Defendants **Ellis J. Pailet** and **Brandon J. Frank**, in conducting and participating in the WDI-TS, violate **18 USC §1962(c)**, and in conspiring in the WDI-TS, violate **18 USC §1962(d)**, as set forth above.

299. The actions of attorney Defendant **Gregory D. Latham**, in conspiring in the WDI-TS, violate **18 USC §1962(d)**, as set forth above.

300. Defendants' pattern of violations of **18 USC §1962(a)**, **§1962(c)**, & **§1962(d)** have caused injury to Plaintiff **Who Dat Shoppe! LLC**, as set forth above, and are privately actionable under **18 USC §1964(c)**.

301. Plaintiff **Who Dat Shoppe! LLC** is entitled to relief, including damages, treble damages, and reasonable attorney fees under **18 USC §1964(c)**.

### Federal Clayton Act & Sherman Antitrust Act Claim
### Count 2, Clayton Act & Sherman Antitrust Act Attempted Monopolization.

302. This claim is made under **Clayton Act §4** & **§16** (**15 USC §15** & **§26**) for attempted monopolization under **Sherman Antitrust Act §2** (**15 USC §2**).

303. Who Dat?, Inc. has engaged in sham litigation against Who Dat Shoppe! LLC and Ronald B. Dunaway, and others, has misused the governmental process itself as an anti-competitive weapon, and has made fraudulent willful material misstatements in Court and to the USPTO, as set forth with specificity above, invoking an exception to the *Noerr-Pennington* doctrine, and negating First-Amendment protections.

304. Who Dat?, Inc.'s misuse of the governmental process itself as an anti-competitive weapon includes the sham and abusive litigation in the several lawsuits set forth above and in this lawsuit LAED-13-6543, the filing of fraudulent willful material misstatements in court, and the filing of fraudulent material misstatements in proceedings in the USPTO and TTAB, all as set forth with specificity above.

305. Who Dat?, Inc. has attempted to unlawfully enforce its fraudulently obtained trademark registrations as property rights, and has attempted to enforce its trademarks beyond the proper bounds of those rights, as set forth in detail above.

306. Who Dat?, Inc. obstructed adjudicatory and regulatory proceedings in both the Court and the USPTO, in gaining, maintaining, enforcing, and litigating undeserved and fraudulently obtained trademark monopoly and exclusive rights, as set forth in detail above.

307. Who Dat?, Inc.'s attempted enforcement of the fraudulently obtained trademark rights threatens to lessen competition in the relevant market for Who-Dat-support apparel & merchandise, because trademark registrations are government-sanctioned exclusive rights that affect competition.

308. Who Dat?, Inc. has acted with specific intent to monopolize the Who-Dat-support apparel & merchandise market by asserting undeserved and fraudulently obtained trademark monopoly and exclusive rights.

**309.** There is a dangerous probability that Who Dat?, Inc.'s attempted monopolization will succeed because the fraudulently obtained patents and trademark registrations appear to be facially valid and sanctioned by the federal and state governments, and because granted trademark registrations, even if obtained by fraud, are given a presumption of validity, both in the courts and in the marketplace, and the costs of challenging trademark registrations, especially in the face of obstructive and abusive litigation, is very high.

**310.** Defendant **Who Dat?, Inc.** has violated **Sherman Antitrust Act §2** (**15 USC §2**) by the attempted monopolization set forth in detail above.

**311.** Plaintiff **Who Dat Shoppe! LLC** has suffered antitrust injury as set forth in detail above caused by the attempted monopolization by Defendant **Who Dat?, Inc.**

**312.** Plaintiff **Who Dat Shoppe! LLC** is entitled to recover treble damages, costs, reasonable attorney fees, and interest, from Defendant **Who Dat?, Inc.**, under **Clayton Act §4** (**15 USC §15**).

**313.** Plaintiff **Who Dat Shoppe! LLC** is entitled to injunctive relief and reasonable attorney fees from Defendant **Who Dat?, Inc.** under **Clayton Act §16** (**15 USC §26**).

### Federal Lanham-Act Claims

### Count 3, Lanham-Act Unfair Competition

**314.** The complained-of actions of Defendant **Who Dat?, Inc.**, causing injury to Plaintiff **Who Dat Shoppe! LLC**, regarding all assertions and registrations of all trademarks, as set forth in detail above, are unfair competition under **Lanham Act §43(a)** (**15 USC §1125(a)**).

**315.** Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §35** (**15 USC §1117**) to recover damages, enhanced damages, profits, and litigation costs from Defendant **Who Dat?, Inc.** for the unlawful actions of unfair competition.

### Count 4, Lanham-Act Exceptional Case

**316.** Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §35** (**15 USC §1117**) to recover reasonable attorney fees for Defendant **Who Dat?, Inc.'s** fraudulent or willful acts which make this case exceptional.

**Count 5, Fraudulent TM Registration:**
**No. 2,890,070 for WHO DAT? BLUES BAND in Class 041.**

**317.**  Defendant **Who Dat?, Inc.** has violated **Lanham Act §38** (**15 USC §1120**) by the complained-of actions re the obtaining by fraud of Registration No. 2,890,070 for WHO DAT? BLUES BAND in Class 041, causing injury to Plaintiff **Who Dat Shoppe! LLC**, as set forth in detail above.

**318.**  Plaintiff **Who Dat Shoppe! LLC** is entitled to recover damages under **Lanham Act §38** (**15 USC §1120**) for the fraudulent registration of WHO DAT? BLUES BAND.

**319.**  Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §37** (**15 USC §1119**) to cancellation of Registration No. 2,890,070 for WHO DAT? BLUES BAND in Class 041, or in the alternative, a return of the registration to its rightful owner Ronnie Lee Parker of Michigan and the legitimate Who Dat? Blues Band.

**Count 6, Declaratory Judgment, Invalidity & Non-Infringement of**
**Registration No. 2,890,070 for WHO DAT? BLUES BAND in Class 041.**

**320.**  For the reasons set forth in detail above, Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §37 (15 USC §1119)** and **28 USC §2201(a)** to a declaratory judgment that Defendant **Who Dat?, Inc.'s** purported trademark Registration No. 2,890,070 for WHO DAT? BLUES BAND in Class 041 is not infringed, and is invalid, or in the alternative, a return of the registration to its rightful owner Ronnie Lee Parker of Michigan and the legitimate Who Dat? Blues Band.

**321.**  Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §34 (15 USC §1116)** to an injunction against any continued assertion of any trademark in WHO DAT? BLUES BAND by Defendant **Who Dat?, Inc.**

**Count 7, Fraudulent TM Registration:**
**No. 4,310,960 for WHO DAT? in Class 009.**

**322.** Defendant **Who Dat?, Inc.** has violated **Lanham Act §38** (**15 USC §1120**) by the complained-of actions re the obtaining by fraud of Registration No. 4,310,960 for WHO DAT? in Class 009, causing injury to Plaintiff **Who Dat Shoppe! LLC**, as set forth in detail above.

**323.** Plaintiff **Who Dat Shoppe! LLC** is entitled to recover damages under **Lanham Act §38** (**15 USC §1120**) for the fraudulent registration of WHO DAT?.

**324.** Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §37** (**15 USC §1119**) to cancellation of Registration No. 4,310,960 for WHO DAT? in Class 009.

**Count 8, Declaratory Judgment, Invalidity & Non-Infringement of**
**Registration No. 4,310,960 for WHO DAT? in Class 009.**

**325.** For the reasons set forth in detail above, Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §37 (15 USC §1119)** and **28 USC §2201(a)** to a declaratory judgment that Defendant **Who Dat?, Inc.'s** purported trademark Registration No. 4,310,960 for WHO DAT? in Class 009 is invalid and not infringed.

**326.** Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §34 (15 USC §1116)** to an injunction against any continued assertion of any trademark in WHO DAT by Defendant **Who Dat?, Inc.**

**Count 9, Fraudulent TM Registration:**
**No. 4,385,857 for WHO DAT? in Class 025.**

**327.** Defendant **Who Dat?, Inc.** has violated **Lanham Act §38** (**15 USC §1120**) by the complained-of actions re the obtaining by fraud of Registration No. 4,385,857 for WHO DAT? in Class 025, causing injury to Plaintiff **Who Dat Shoppe! LLC**, as set forth in detail above.

**328.** Plaintiff **Who Dat Shoppe! LLC** is entitled to recover damages under **Lanham Act §38** (**15 USC §1120**) for the fraudulent registration of WHO DAT?.

**329.** Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §37** (**15 USC §1119**) to cancellation of Registration No. 4,385,857 for WHO DAT? in Class 025.

### Count 10, Declaratory Judgment, Invalidity & Non-Infringement of
### Registration No. 4,385,857 for WHO DAT? in Class 025.

**330.** For the reasons set forth in detail above, Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §37 (15 USC §1119)** and **28 USC §2201(a)** to a declaratory judgment that Defendant **Who Dat?, Inc.'s** purported trademark Registration No. 4,385,857 for WHO DAT? in Class 025 is invalid and not infringed.

**331.** Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §34 (15 USC §1116)** to an injunction against any continued assertion of any trademark in WHO DAT by Defendant **Who Dat?, Inc.**

### Count 11, Fraudulent TM Registration:
### No. 4,051,289 for TWO DAT in Class 025.

**332.** Defendant **Who Dat?, Inc.** has violated **Lanham Act §38 (15 USC §1120)** by the complained-of actions re the obtaining by fraud of Registration No. 4,051,289 for TWO DAT in Class 025, causing injury to Plaintiff **Who Dat Shoppe! LLC**, as set forth in detail above.

**333.** Plaintiff **Who Dat Shoppe! LLC** is entitled to recover damages under **Lanham Act §38 (15 USC §1120)** for the fraudulent registration of TWO DAT.

**334.** Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §37 (15 USC §1119)** to cancellation of Registration No. 4,051,289 for TWO DAT in Class 025.

### Count 12, Declaratory Judgment, Invalidity & Non-Infringement of
### Registration No. 4,051,289 for TWO DAT in Class 025.

**335.** For the reasons set forth in detail above, Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §37 (15 USC §1119)** and **28 USC §2201(a)** to a declaratory judgment that Defendant **Who Dat?, Inc.'s** purported trademark Registration No. 4,051,289 for TWO DAT in Class 025 is invalid and not infringed.

**336.** Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §34 (15 USC §1116)** to an injunction against any continued assertion of any trademark in TWO DAT by Defendant **Who Dat?, Inc.**

**Count 13, Fraudulent TM Registration:**
**No. 4,339,102 for TWO DAT! in Class 018.**

**337.** Defendant **Who Dat?, Inc.** has violated **Lanham Act §38** (**15 USC §1120**) by the complained-of actions re the obtaining by fraud of Registration No. 4,339,102 for TWO DAT! in Class 018, causing injury to Plaintiff **Who Dat Shoppe! LLC**, as set forth in detail above.

**338.** Plaintiff **Who Dat Shoppe! LLC** is entitled to recover damages under **Lanham Act §38** (**15 USC §1120**) for the fraudulent registration of TWO DAT!.

**339.** Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §37** (**15 USC §1119**) to cancellation of Registration No. 4,339,102 for TWO DAT! in Class 018.

**Count 14, Declaratory Judgment, Invalidity & Non-Infringement of**
**Registration No. 4,339,102 for TWO DAT! in Class 018.**

**340.** For the reasons set forth in detail above, Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §37 (15 USC §1119)** and **28 USC §2201(a)** to a declaratory judgment that Defendant **Who Dat?, Inc.'s** purported trademark Registration No. 4,339,102 for TWO DAT! in Class 018 is invalid and not infringed.

**341.** Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §34 (15 USC §1116)** to an injunction against any continued assertion of any trademark in TWO DAT by Defendant **Who Dat?, Inc.**

**Count 15, Fraudulent TM Registration:**
**No. 4,402,283 for WHO DAT in Class 033.**

**342.** Defendant **Who Dat?, Inc.** has violated **Lanham Act §38** (**15 USC §1120**) by the complained-of actions re the obtaining by fraud of Registration No. 4,402,283 for WHO DAT in Class 033, causing injury to Plaintiff **Who Dat Shoppe! LLC**, as set forth in detail above.

**343.** Plaintiff **Who Dat Shoppe! LLC** is entitled to recover damages under **Lanham Act §38** (**15 USC §1120**) for the fraudulent registration of WHO DAT.

**344.** Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §37** (**15 USC §1119**) to cancellation of Registration No. 4,402,283 for WHO DAT in Class 033.

### Count 16, Declaratory Judgment, Invalidity & Non-Infringement of
### Registration No. 4,402,283 for WHO DAT in Class 033.

**345.** For the reasons set forth in detail above, Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §37 (15 USC §1119)** and **28 USC §2201(a)** to a declaratory judgment that Defendant **Who Dat?, Inc.'s** purported trademark Registration No. 4,402,283 for WHO DAT in Class 033 is invalid and not infringed.

**346.** Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §34 (15 USC §1116)** to an injunction against any continued assertion of any trademark in WHO DAT by Defendant **Who Dat?, Inc.**

### Count 17, Fraudulent TM Registration:
### Serial No. 85-113,102 for WHO DAT in Classes 034 & 043.

**347.** Defendant **Who Dat?, Inc.** has violated **Lanham Act §38 (15 USC §1120)** by the complained-of actions re the prospective obtaining by fraud of a registration proceeding from Application Serial No. 85-113,102 for WHO DAT in Classes 034 & 043, causing injury to Plaintiff **Who Dat Shoppe! LLC**, as set forth in detail above.

**348.** Plaintiff **Who Dat Shoppe! LLC** is entitled to recover damages under **Lanham Act §38 (15 USC §1120)** for the fraudulent registration of WHO DAT.

**349.** Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §37 (15 USC §1119)** to cancellation or prevention of any registration proceeding from Application Serial No. 85-113,102 for WHO DAT in Classes 034 & 043.

### Count 18, Declaratory Judgment, Invalidity & Non-Infringement of
### Serial No. 85-113,102 for WHO DAT in Classes 034 & 043.

**350.** For the reasons set forth in detail above, Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §37 (15 USC §1119)** and **28 USC §2201(a)** to a declaratory judgment that Defendant **Who Dat?, Inc.'s** purported trademark Serial No. 85-113,102 for WHO DAT in Classes 034 & 043 is invalid and not infringed.

**351.** Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §34 (15 USC §1116)** to an injunction against any continued assertion of any trademark in WHO DAT by Defendant **Who Dat?, Inc.**

**Count 19, Fraudulent TM Registration:**
**Serial No. 85-113,104 for 2 D@! in Class 025.**

352. Defendant **Who Dat?, Inc.** has violated **Lanham Act §38** (**15 USC §1120**) by the complained-of actions re the prospective obtaining by fraud of a registration proceeding from Application Serial No. 85-113,104 for 2 D@! in Class 025, causing injury to Plaintiff **Who Dat Shoppe! LLC**, as set forth in detail above.

353. Plaintiff **Who Dat Shoppe! LLC** is entitled to recover damages under **Lanham Act §38** (**15 USC §1120**) for the fraudulent registration of 2 D@!.

354. Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §37** (**15 USC §1119**) to cancellation or prevention of any registration proceeding from Application Serial No. 85-113,104 for 2 D@! in Class 025.

**Count 20, Declaratory Judgment, Invalidity & Non-Infringement of**
**Serial No. 85-113,104 for 2 D@! in Class 025.**

355. For the reasons set forth in detail above, Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §37 (15 USC §1119)** and **28 USC §2201(a)** to a declaratory judgment that Defendant **Who Dat?, Inc.'s** purported trademark Serial No. 85-113,104 for 2 D@! in Class 025 is invalid and not infringed.

356. Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §34 (15 USC §1116)** to an injunction against any continued assertion of any trademark in 2 D@! by Defendant **Who Dat?, Inc.**

**Count 21, Fraudulent TM Registration:**
**Serial No. 86-050,118 for WHO DAT? in Class 030.**

357.  Defendant **Who Dat?, Inc.** has violated **Lanham Act §38** (**15 USC §1120**) by the complained-of actions re the prospective obtaining by fraud of a registration proceeding from Application Serial No. 86-050,118 for WHO DAT? in Class 030, causing injury to Plaintiff **Who Dat Shoppe! LLC**, as set forth in detail above.

358.  Plaintiff **Who Dat Shoppe! LLC** is entitled to recover damages under **Lanham Act §38** (**15 USC §1120**) for the fraudulent registration of WHO DAT?.

359.  Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §37** (**15 USC §1119**) to cancellation or prevention of any registration proceeding from Application Serial No. 86-050,118 for WHO DAT? in Class 030.

**Count 22, Declaratory Judgment, Invalidity & Non-Infringement of**
**Serial No. 86-050,118 for WHO DAT? in Class 030.**

360. For the reasons set forth in detail above, Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §37 (15 USC §1119)** and **28 USC §2201(a)** to a declaratory judgment that Defendant **Who Dat?, Inc.'s** purported trademark Serial No. 86-050,118 for WHO DAT? in Class 030 is invalid and not infringed.

361.  Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §34 (15 USC §1116)** to an injunction against any continued assertion of any trademark in WHO DAT by Defendant **Who Dat?, Inc.**

**Count 23, Declaratory Judgment, Invalidity & Non-Infringement of**
**Louisiana Registration No. 62-1132 for WHO DAT NATION in Classes 25 & 35.**

362.  For the reasons set forth in detail above, Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §37 (15 USC §1119)** and **28 USC §2201(a)** to a declaratory judgment that Defendant **Who Dat?, Inc.'s** purported trademark Louisiana Trade Mark Registration No. 62-1132 for WHO DAT NATION in Classes 25 & 35 is invalid and not infringed.

363.  Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §34 (15 USC §1116)** to an injunction against any continued assertion of any trademark in WHO DAT NATION by Defendant **Who Dat?, Inc.**

**Count 24, Declaratory Judgment, Invalidity & Non-Infringement of**
**Louisiana Registration No. 62-1569 for WHO DAT? in Class 33.**

**364.** For the reasons set forth in detail above, Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §37 (15 USC §1119)** and **28 USC §2201(a)** to a declaratory judgment that Defendant **Who Dat?, Inc.'s** purported trademark Louisiana Trade Mark Registration No. 62-1569 for WHO DAT? in Class 33 is invalid and not infringed.

**365.** Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §34 (15 USC §1116)** to an injunction against any continued assertion of any trademark in WHO DAT by Defendant **Who Dat?, Inc.**

**Count 25, Declaratory Judgment, Invalidity & Non-Infringement of**
**Louisiana Registration No. 63-4800 for WHO DAT? in Classes 06, 17, 18, 20, 24, 25, 26, & 34.**

**366.** For the reasons set forth in detail above, Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §37 (15 USC §1119)** and **28 USC §2201(a)** to a declaratory judgment that Defendant **Who Dat?, Inc.'s** purported trademark Louisiana Trade Mark Registration No. 63-4800 for WHO DAT? in Classes 06, 17, 18, 20, 24, 25, 26, & 34 is invalid and not infringed.

**367.** Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §34 (15 USC §1116)** to an injunction against any continued assertion of any trademark in WHO DAT by Defendant **Who Dat?, Inc.**

**Count 26, Declaratory Judgment, Invalidity & Non-Infringement of**
**Louisiana Registration No. 63-4828 for WHO DAT NATION in Class 42.**

**368.** For the reasons set forth in detail above, Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §37 (15 USC §1119)** and **28 USC §2201(a)** to a declaratory judgment that Defendant **Who Dat?, Inc.'s** purported mark Louisiana Service Mark Registration No. 63-4828 for WHO DAT NATION in Class 42 is invalid and not infringed.

**369.** Plaintiff **Who Dat Shoppe! LLC** is entitled under **Lanham Act §34 (15 USC §1116)** to an injunction against any continued assertion of any trademark in WHO DAT NATION by Defendant **Who Dat?, Inc.**

## Louisiana State-Law Claims

### Count 27, Louisiana R.S. 51:137 Antitrust Claim

**370.** Defendant **Who Dat?, Inc.** has violated **La. R.S. 51:123** by the attempted monopolization perpetrated in Louisiana, as set forth in detail above.

**371.** Plaintiff **Who Dat Shoppe! LLC** has suffered antitrust injury as set forth in detail above proximately caused by Defendant **Who Dat?, Inc.'s** attempted monopolization.

**372.** Plaintiff **Who Dat Shoppe! LLC** is entitled to recover treble damages, costs, and reasonable attorney fees from Defendant **Who Dat?, Inc.** under **La. R.S. 51:137**.

**373.** Plaintiff **Who Dat Shoppe! LLC** is entitled to injunctive relief under **La. R.S. 51:129**.

### Count 28, Louisiana R.S. 14:66 Extortion Claim.

**374.** Defendants **Who Dat?, Inc.**, **Steve Monistere**, **Sal Monistere**, **Ellis J. Pailet**, and **Brandon J. Frank** are liable to Plaintiff **Who Dat Shoppe! LLC** under **Louisiana R.S. 14:66** for the extortion set forth in detail above.

### Count 29, Louisiana Civil Code Article 2324 Conspiracy Claim: Extortion.

**375.** Defendants **Ellis J. Pailet**, **Brandon J. Frank**, and **Gregory D. Latham** are liable to Plaintiff **Who Dat Shoppe! LLC** under **Louisiana Civil Code Article 2324** for conspiracy to commit the complained-of extortion under **Louisiana R.S. 14:66**, as set forth in detail above.

### Count 30, Louisiana Unfair Competition & Trade Practices Claim.

**376.** The complained-of actions of Defendant **Who Dat?, Inc.**, causing ascertainable losses to Plaintiff **Who Dat Shoppe! LLC**, as set forth in detail above, are unfair competition under the **Louisiana Unfair Trade Practices Act** (LUTPA), **La. R.S. 51:1405**, *et seq.*

**377.** Plaintiff **Who Dat Shoppe! LLC** is entitled under the **LUTPA** to recover damages for Defendant **Who Dat?, Inc.'s** unfair-competition injury.

**378.** Plaintiff **Who Dat Shoppe! LLC** is entitled under the **LUTPA** to recover treble damages and reasonable attorney fees for Defendant **Who Dat?, Inc.'s** fraudulent or willful actions.

### Count 31, Louisiana Civil Code Article 2315 Damages Claim: Abuse of Process.

379. Defendants **Who Dat?, Inc.**, **Steve Monistere**, and **Sal Monistere** had the ulterior purposes to build a portfolio of bogus trademarks registrations through misstatements to the USPTO and TTAB and in court, and to force Who Dat Shoppe! LLC into a position of accepting a license and to gain control of the "Who Dat Shoppe" name, as set forth with specificity above.

380. Defendants **Who Dat?, Inc.**, **Steve Monistere**, and **Sal Monistere** performed willful acts not in the regular prosecution of the proceedings, including making willful material misstatements to the USPTO and TTAB and in court, as set forth with specificity above.

381. Defendants **Who Dat?, Inc.**, **Steve Monistere**, and **Sal Monistere** are liable to Plaintiff **Who Dat Shoppe! LLC** under **Louisiana Civil Code Article 2315** for damages caused by the complained-of abuse of process, as set forth in detail above.

### Count 32, Louisiana Civil Code Article 2324 Conspiracy Claim: Abuse of Process.

382. Defendants **Ellis J. Pailet**, **Brandon J. Frank** and **Gregory D. Latham** conspired in the ulterior purposes to build a portfolio of bogus trademarks registrations through misstatements to the USPTO and TTAB and in court, and to force Who Dat Shoppe! LLC into a position of accepting a license and to gain control of the "Who Dat Shoppe" name, as set forth with specificity above.

383. Defendants **Ellis J. Pailet**, **Brandon J. Frank** and **Gregory D. Latham** conspired in performing willful acts not in the regular prosecution of the proceedings, including making willful material misstatements to the USPTO and TTAB and in court, as set forth with specificity above.

384. Defendants **Ellis J. Pailet**, **Brandon J. Frank** and **Gregory D. Latham** are liable to Plaintiff **Who Dat Shoppe! LLC** under **Louisiana Civil Code Article 2324** for damages caused by conspiracy to commit the complained-of abuse of process, as set forth in detail above.

**Count 33, Louisiana Civil Code Article 2315 Damages Claim:**
**Fraud, Obstruction, & Abusive Litigation.**

**385.** Defendants **Who Dat?, Inc.**, **Steve Monistere**, **Sal Monistere**, **Ellis J. Pailet**, and **Brandon J. Frank** are liable to Plaintiff **Who Dat Shoppe! LLC** under **Louisiana Civil Code Article 2315** for damages caused by the complained-of fraud, obstruction of justice, and abusive litigation, as set forth in detail above.

**Count 34, Louisiana Civil Code Article 2324 Conspiracy Claim:**
**Fraud, Obstruction, & Abusive Litigation.**

**386.** Defendants **Ellis J. Pailet**, **Brandon J. Frank** and **Gregory D. Latham** are liable to Plaintiff **Who Dat Shoppe! LLC** under **Louisiana Civil Code Article 2324** for damages caused by conspiracy to commit the complained-of fraud, obstruction of justice, and abusive litigation, as set forth in detail above.

**Count 35, Damages for Louisiana Trade Mark Registration**
**No. 62-1132 for WHO DAT NATION in Classes 25 & 35.**

**387.** Defendants **Who Dat?, Inc. and "any person"** who helped fraudulently obtain Louisiana Trade Mark Registration No. 62-1132 for WHO DAT NATION in Classes 25 & 35 are liable for damages under **La. R.S. 51:221** to Plaintiff **Who Dat Shoppe! LLC**.

**Count 36, Cancellation of Louisiana Trade Mark Registration**
**No. 62-1132 for WHO DAT NATION in Classes 25 & 35.**

**388.** Plaintiff **Who Dat Shoppe! LLC** is entitled under **La. R.S. 51:219(4)** to an order cancelling Louisiana Trade Mark Registration No. 62-1132 for WHO DAT NATION in Classes 25 & 35.

**Count 37, Damages for Louisiana Trade Mark Registration**
**No. 62-1569 for WHO DAT? in Class 33.**

**389.** Defendants **Who Dat?, Inc. and "any person"** who helped fraudulently obtain Louisiana Trade Mark Registration No. 62-1569 for WHO DAT? in Class 33 are liable for damages under **La. R.S. 51:221** to Plaintiff **Who Dat Shoppe! LLC**.

**Count 38, Cancellation of Louisiana Trade Mark Registration**
**No. 62-1569 for WHO DAT? in Class 33.**

**390.** Plaintiff **Who Dat Shoppe! LLC** is entitled under **La. R.S. 51:219(4)** to an order cancelling Louisiana Trade Mark Registration No. 62-1569 for WHO DAT? in Class 33.

**Count 39, Damages for Louisiana Trade Mark Registration**
**No. 63-4800 for WHO DAT? in Classes 06, 17, 18, 20, 24, 25, 26, & 34.**

**391.** Defendants **Who Dat?, Inc. and "any person"** who helped fraudulently obtain Louisiana Trade Mark Registration No. 63-4800 for WHO DAT? in Classes 06, 17, 18, 20, 24, 25, 26, & 34 are liable for damages under **La. R.S. 51:221** to Plaintiff **Who Dat Shoppe! LLC**.

**Count 40, Cancellation of Louisiana Trade Mark Registration**
**No. 63-4800 for WHO DAT? in Classes 06, 17, 18, 20, 24, 25, 26, & 34.**

**392.** Plaintiff **Who Dat Shoppe! LLC** is entitled under **La. R.S. 51:219(4)** to an order cancelling Louisiana Trade Mark Registration No. 63-4800 for WHO DAT? in Classes 06, 17, 18, 20, 24, 25, 26, & 34.

**Count 41, Damages for Louisiana Service Mark Registration**
**No. 63-4828 for WHO DAT NATION in Class 42.**

**393.** Defendants **Who Dat?, Inc. and "any person"** who helped fraudulently obtain Louisiana Service Mark Registration No. 63-4828 for WHO DAT NATION in Class 42 are liable for damages under **La. R.S. 51:221** to Plaintiff **Who Dat Shoppe! LLC**.

**Count 42, Cancellation of Louisiana Service Mark Registration**
**No. 63-4828 for WHO DAT NATION in Class 42.**

**394.** Plaintiff **Who Dat Shoppe! LLC** is entitled under **La. R.S. 51:219(4)** to an order cancelling Louisiana Service Mark Registration No. 63-4828 for WHO DAT NATION in Class 42.

## Prayer for Relief

Wherefore Plaintiff **Who Dat Shoppe! LLC** prays after due proceedings this Court render judgment against Defendants **Who Dat?, Inc.**, **Steve Monistere, Sal Monistere**, **Ellis J. Pailet**, **Brandon J. Frank**, and **Gregory D. Latham** for damages, enhanced damages, treble damages, costs, interest, reasonable attorney fees, and injunctive and other equitable relief, under federal Civil-RICO, Clayton-&-Sherman-Antitrust-Act, and Lanham-Act laws, and Louisiana law, and any other equitable or legal remedies authorized.

Respectfully submitted:
*Attorney for Who Dat Shoppe! LLC*

Mark Edw. Andrews
La. Bar No. 26172
Andrews Arts & Sciences Law llc
7104 Coliseum St., New Orleans, LA 70118
504-383-3632
mea@mealaw.com